No. 25267.

THE COLORADO STATE BOARD OF SOCIAL SERVICES *v.* GLENN K. BILLINGS, HARRY S. ASHLEY, AND MARSHALL ANDERSON, INDIVIDUALLY AND AS MEMBERS OF THE WELD COUNTY BOARD OF COUNTY COMMISSIONERS AND AS THE WELD COUNTY BOARD OF PUBLIC WELFARE.

(487 P.2d 1110)

Decided August 12, 1971. Rehearing denied August 16, 1971.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, DOUGLAS D. DOANE, Special Assistant, for plaintiff-appellant.

SAMUEL S. TELEP, THOMAS A. CONNELL, SCHNEIDER, SHOEMAKER, WHAM & COOKE, RONALD LEE COOKE, ELWYN F. SCHAEFER, for defendants-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THE appellant, called the state board, brought an action in the district court to compel Weld County, through its board of county commissioners, to defray 20% of the welfare costs in the county. The district judge refused to enter a temporary restraining order and then upon stipulation of counsel placed his decision in a final, appealable form. Appeal was taken to our court of appeals and almost immediately thereafter the matter was certified to this court under the provisions of 1969 Perm. Supp., C.R.S. 1963, 37-21-9. We reverse and hold that a mandatory injunction should issue.

Several different types of welfare benefits are involved, being aid to (1) indigent tuberculars, C.R.S. 1963, 119-2-1 *et seq.*, as amended; (2) needy disabled, C.R.S. 1963, 119-6-1 *et. seq.*, as amended; (3) the blind, C.R.S. 1963, 16-2-1 *et seq.*, as amended; and (4) dependent children, 1967 Perm. Supp., C.R.S. 1963, 119-9-1 *et seq.*, as amended.

In each type of aid the state has obligated itself to reimburse the counties for 80% of the costs of the aid and administration expenses, subject to certain requirements which the counties must meet. There is a difference in wording of comparable provisions in the statutes

relating to aid to dependent children, on the one hand, and in the statutes relating to the other three types of benefits, on the other hand. Principally by the use of the word "shall" instead of "may" in portions of the provisions concerning the other three types, the mandatory character of the legislation requiring counties to pay 20% is beyond question. On oral argument, counsel for the appellees conceded that the county is liable for 20% of the cost of the program for indigent tuberculars, needy disabled, and the blind. Therefore, our attention will be directed to the statutory provisions relating to aid to dependent children.

The state board is the agency which administers public welfare programs on behalf of the state. The board of county commissioners in each county is the county board of public welfare, whose duties are to appoint the county director of public welfare and fix his salary in accordance with a salary schedule prescribed by the state department of public welfare. C.R.S. 1963, 119-1-10 and 11. So far as we are advised, these and approval of the hiring of the county department staff are the only duties placed upon the county board, acting as such.

1967 Perm. Supp., C.R.S. 1963, 119-9-12 provides as follows in regard to aid to dependent children:

"The board of county commissioners in each county shall appropriate annually such sum as in its discretion and judgment may be needed to carry out the provisions of this article, including expenses of administration based upon a budget prepared by the county welfare department, after taking into account state and federal funds. The board is to include in the tax levy for such county, the sum appropriated for that purpose. Should the sum so appropriated be expended or exhausted, during the year, and for the purpose for which it was appropriated, additional sums may be appropriated by the board of county commissioners."

The budget for 1971 prepared by the county welfare department estimated that the county's 20% share would

amount to $1,114,378, which would require a levy of 5.51 mills. The board of county commissioners in contrast made a levy for welfare for the year 1971 in the amount of 3.0 mills, to produce an estimated $602,790. When mid-year 1971 approached, it appeared that the funds that Weld County had appropriated for this purpose would be substantially exhausted by the end of July 1971. The state board on July 1, 1971, entered an order directing the county commissioners of Weld County to make sufficient county funds available for the remainder of 1971 in order that the county's 20% share would be paid. The county commissioners have not complied with the order and have indicated that, in the absence of a judicial mandate, they will not do so.

■ While other questions are presented here, upon some of which we will later have comment, the fundamental question — and the one we first approach — is, irrespective of its lack of welfare money produced by its *ad velorem* tax, does a county have to defray 20% of the benefits awarded under the aid to dependent children statutes and of the costs incident thereto. We answer the question in the affirmative and hold that our statutes create such a mandate.

■ Colo. Const. art. V, § 1 provides that, "The legislative power of the state shall be vested in the general assembly...." A county and its board of county commissioners have only such powers and authority as are granted by the general assembly, and they must carry out the will of the state as expressed by the general assembly. *Board of County Commissioners v. Love*, 172 Colo. 121, 470 P.2d 861 (1970).

■ A substantial portion of public welfare money administered by the counties comes from federal grants paid to the state, and by the state in turn paid to the counties. Our public welfare statutes and the amendments thereof have been adopted in the light of federal requirements that the public welfare benefits must be allocated and expended in accordance with the state's

plan by *all* the political subdivisions of the state handling the administration of the matter, *i.e.*, in Colorado, the counties. 42 U.S.C. § 602; and 45 C.F.R. § 205.120, as found in 36 Fed. Reg. 3862 (1971).

We find exhibited in the Colorado statutes a legislative intent that each county must bear 20% of the welfare costs expended by it, and that one county cannot bear a lesser percentage than another. The state department of public welfare must require as a condition for a county to receive grants-in-aid that the county shall bear the proportion of total expense of furnishing aid as fixed by law. C.R.S. 1963, 119-1-5. The board of county commissioners are authorized to make appropriations to defray the cost of "necessary welfare services within the county." 1969 Perm. Supp., C.R.S. 1963, 119-1-15. The county welfare budget is to contain, among other things, "the estimated amount required to be raised by county taxation in order to meet the county's share of the cost of public welfare." C.R.S. 1963, 119-3-5. The state department of social services is required to take such action as may be necessary or desirable for carrying out the provisions of the welfare laws and all "rules and regulations made by the state board shall be binding on the counties and shall be complied with by the respective county departments...." 1969 Perm. Supp., C.R.S. 1963, 119-9-2(1)(c). 1969 Perm. Supp., C.R.S. 1963, 119-9-5 provides:

"The amount of assistance or aid to families with dependent children which shall be granted shall be on the basis of budgetary need as determined by the county department, with due regard to any other resources and in accordance with rules and regulations made by the state board, which may include the use of tables, standards, and other criteria with respect to such determination of budgetary need."

1969 Perm. Supp., C.R.S. 1963, 119-9-8 provides as follows:

"Upon the completion of the verification and record,

the county department shall decide whether the child is eligible for assistance or aid under the provisions of this article, and shall determine the amount of such assistance and the date upon which such assistance shall begin. It shall make an award which shall be binding upon the county, which award shall continue until modified or vacated. Upon its order, assistance shall be paid to or in behalf of the applicant from funds appropriated to it for such purpose."

1967 Perm. Supp., C.R.S. 1963, 119-9-12 provides:

"The board of county commissioners in each county shall appropriate annually such sum as in its discretion and judgment may be needed to carry out the provisions of this article, including expenses of administration based upon a budget prepared by the county welfare department, after taking into account state and federal funds. The board is to include in the tax levy for such county, the sum appropriated for that purpose. Should the sum so appropriated be expended or exhausted, during the year, and for the purpose for which it was appropriated, additional sums may be appropriated by the board of county commissioners."

The standards governing the granting of aid and governing the amount to be paid to persons are established by the state board, except as are provided by statute. The county board of public welfare and the county department of public welfare must follow these standards. The conclusion follows that the county commissioners do not have discretion to decide who is going to receive benefits and how much each person will receive, nor to rescind the benefits awarded to a person. Its province is to appoint the county director, fix his salary, approve appointments and raise the money to pay the bill.

The statutes provide that the state will reimburse the counties for 80% of the amounts spent for welfare. 1969 Perm. Supp., C.R.S. 1963, 119-9-13. In other words, the counties bear the remaining 20%. While the statute

in places uses the term "may," it is quite apparent to us that the general assembly has used it in a mandatory sense and has ordered each board of county commissioners to pay 20% of the benefits awarded and incidental costs. *Carleno Sales v. Ramsay Co.*, 129 Colo. 393, 270 P.2d 755 (1954).

The record discloses that the county commissioners' association recently asked the general assembly to enact legislation under which counties would not be liable for welfare costs in excess of the amounts raised by the mill levies made for that purpose. In contrast, the First Regular Session of the Forty-eighth General Assembly enacted Senate Bill No. 149, which was approved on May 6, 1971. This is a re-enactment and amendment of C.R.S. 1963, 119-1-15. It provides in part as follows:

"(1) The board of county commissioners in each county of this state shall annually appropriate as provided by law such funds as shall be needed to carry out the public assistance and social services activities of the county department, including the costs of administration, based upon the county welfare budget prepared by the county department pursuant to section 119-3-5, after taking into account state reimbursements provided for in this section, and shall include in the tax levy for such county the sums appropriated for this purpose. In the case of a district welfare department each county forming a part of said district shall appropriate the funds necessary to defray the welfare activities of such individual county.

"(2) (a) If the county departments are administered in accordance with the policies and rules of the department for the administration of county departments, eighty percent of the administrative costs of the county departments shall be advanced or reimbursed to the county by the state treasurer from funds appropriated or made available for such purpose. ...."

This bill has an effective date of July 1, 1971. Under our determination of this matter, it is unnecessary to express a view as to whether this enactment is controlling here.

It may be that the legislative intent was for it to come into operation at the time counties fix their mill levies in the fall of 1971. In any event, it would appear, although we do not decide, that under this enactment the questions argued here become academic with the year 1972, as it seems that the general assembly sets forth in unequivocal terms the same mandates which we have determined that it previously enacted.

 The appellees urge strongly that C.R.S. 1963, 119-3-6 provides for a levy limit in Weld County of 3 mills for welfare purposes. They further argue that there is no duty upon the county to petition the property tax administrator for a rate in excess of these limits under C.R.S. 1963, 119-3-6(4) as amended by Colo. Sess. Laws 1970, ch. 90, § 5. The state board urges that the property tax administrator and his predecessor, the state tax commission, has without exception granted all requests for excess levies. A ruling on this question is unnecessary as it is our holding that in some manner the counties must produce their 20%, whether it be from contingency funds, an excess levy, registered warrants (C.R.S. 1963, 88-1-16), sales tax or otherwise.

It is urged by the appellees that, by reason of the wording of C.R.S. 1963, 119-1-5, the state board cannot require Weld County to bear its proportion of total expenses. The statute reads:

"(1) (a) In administering any funds appropriated or made available to the state department for welfare purposes, the state department shall have the power:

(b) To require as a condition for receiving grants-in-aid, that the county shall bear the proportion of the total expense of furnishing aid, as is fixed by law relating to such assistance.

(c) To terminate any grants-in-aid to any county if the laws providing such grant-in-aid and the minimum standards prescribed by the state department thereunder are not complied with."

The contention is that under this wording Weld County

must bear its share "as a condition for receiving grants-in-aid," and the only remedy of the state board is to terminate the grants-in-aid. A decision on our part really is not necessary under the disposition we are making, but we do wish to point out the fallacy of this argument. Conceivably, there might be something to the argument if in advance of 1970 Weld County notified the state board that it was not going to bear its share of welfare costs. Then it might be said that the sole remedy on the part of the state board would be to terminate grants-in-aid. However, here we have an entirely different situation in which Weld County accepted reimbursement from the state with respect to all welfare costs for a period of at least six months and during that time did not indicate to the state board that it would not bear its full 20% during the last half of the year. Thus, the grants-in-aid having been furnished, Weld County availed itself of and met the condition, and as a result the state board has a right to require performance by the county.

The board of commissioners of Weld County has presented its position that welfare funds are being wasted; that the state should bear the burden of costs in excess of the monies realized for a 3-mill levy; that many recipients of public welfare should not be receiving it; and that there ought to be more authority in the county commissioners with respect to the administration of the program. In argument to the trial court the county attorney made a statement to the effect that the action of Weld County was an attempt to get rid of "fakers, cheaters and connivers." However sympathetic we may be with these views, the correction of such evils is in no manner before us in this proceeding. If there are violations of existing laws, of course, appropriate action should be taken; but this issue is not here. As to many of the matters which cause concern to the board of county commissioners, the remedy which the board seeks must come from the legislative branch of the government,

and not from us.

It is contended on behalf of the appellees that the only duty with respect to aid to dependent children was for the board, in fixing the welfare budget and levy, to exercise its discretion. This argument is predicated upon the provisions of 1967 Perm. Supp., C.R.S. 1963, 119-9-12, already quoted. Emphasis is placed upon the wording, "such sum as in its discretion and judgment may be needed to carry out the provisions of this article," and the inclusion of the word "may" in the last sentence relating to appropriations for deficiency. We repeat that disposition has been made of this argument by our determination that the general assembly intended to and has placed a mandate upon the county to furnish 20% of public welfare costs.

The appellees moved that this appeal be dismissed because no motion for new trial was filed. C.R.C.P. 59(h) dispenses with the necessity for such a motion after a hearing involving no controverted issues of fact. We can find nothing in the decision of the trial court and nothing involved in our resolution in this matter predicated upon any controverted issues of fact. As is obvious, we are dealing here almost solely with statutory interpretation. Therefore, we deny the motion to dismiss.

The judgment of the trial court is reversed and the cause remanded with directions that an injunction issue to the end that Weld County furnish its 20% statutory share of the costs of welfare services for the year 1971.

It is ordered that the time for filing of a petition for rehearing be shortened, and that any such petition must be filed by 10:00 o'clock a.m. on Monday, August 16, 1971.