**COLORADO WATER QUALITY CONTROL COMMISSION, Colorado Water Quality Control Division, and the City of Northglenn, Petitioners,**

v.

**The TOWN OF FREDERICK, the City of Fort Lupton, the Weisner Subdivision Preservation Association, Melvin Potter, Edward Quinlan, Ferne Skidmore, and Barbara Hernandez, Respondents.**

No. 81SC62.

Supreme Court of Colorado, En Banc.

March 1, 1982.

As Modified on Denial of Rehearing March 22, 1982.

enactment in 1973.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Thomas Fenton Smith, Asst. Atty. Gen., Natural Resources Section, Denver, for petitioners.

Helen Knoll, City Atty., Northglenn, for petitioner City of Northglenn.

Musick & Cope, Joseph A. Cope, Boulder, Sp. Counsel for petitioner City of Northglenn.

Francis K. Culkin, Denver, for respondents.

DUBOFSKY, Justice.

We granted certiorari to review the Court of Appeals' opinion in *Town of Frederick v. Colorado Water Quality Control Commission*, Colo.App., 628 P.2d 129 (1980). The Court of Appeals held that the plaintiffs did not have to acquire formal party status in an administrative proceeding prior to seeking judicial review, under the State Administrative Procedure Act (A.P.A.), of the Colorado Water Quality Control Commission's (Commission) approval of a wastewater treatment facility site and that the plaintiffs filed their action for review within the statutory 30-day time limit. We reverse.

The City of Northglenn in early 1979 sought site approval from the Commission for Northglenn's planned wastewater treatment plant and storage reservoir in southern Weld County. The facility is designed to treat domestic sewage and wastewater,

the treated effluent to be stored in the adjacent reservoir until released into the Bull Ditch, the Farmer's Reservoir and Irrigation Company irrigation canal, for distribution to the company shareholders.

Section 25–8–704, C.R.S.1973 [1] requires site approval by the Commission before construction of any sewage treatment works. The Colorado Water Quality Control Act (Water Quality Act), sections 25–8–401 and 25–8–403, C.R.S.1973,[2] the A.P.A., sections 24–4–105 and 24–4–106, C.R.S.1973 (1981 Supp.) [3] and the Commission rules, 5 C.C.R. 1002–1 and 1002–12, govern the procedures before the Commission and judicial review of Commission action.

The Northglenn wastewater treatment facility was one of 27 site approvals on the Commission agenda at its regular meeting of April 2, 1979. Without seeking party status, the Town of Frederick, the City of Fort Lupton, and several residents of the Weisner Subdivision, along with their attorney, participated in the lengthy Commission discussion of the Northglenn wastewater treatment facility site location at the Commission meetings on April 2 and 3.

The residents of the Weisner Subdivision about a mile from the proposed plant opposed the location of the treatment facility. They complained to the Commission that they would be harmed by foul odors, a drop in property values, well contamination, and health problems from the use of treated sewage for irrigation on surrounding farms. The Town of Frederick, about five miles downstream from the site on the Bull Ditch, opposed the proposal because the Town planned to use Bull Ditch water as a domes-

tic water supply. The City of Fort Lupton told the Commission that the high level of nitrate from the treated effluent in the Bull Ditch would make it impossible to use the Sand Hill Reservoir as their future water supply. Various state agencies, local governments, environmental groups, and individuals also testified at the meeting or presented written material to the Commission about Northglenn's application. At the close of testimony on April 3, the Commission approved the site application. By letter dated April 5, 1979, the Colorado Water Quality Control Division (Division) formally advised Northglenn of the approval.

On May 2, 1979, counsel for the respondents (acting as a representative for "the inhabitants of Weisner Subdivision"), filed a request with the Commission for reconsideration of the site approval. On May 7, 1979, the Weld County Commissioners filed a similar request. Both requests were denied by the Commission at its regular meeting on May 7, 1979.

On June 6, 1979, the Town of Frederick, the City of Fort Lupton, the Weisner Subdivision Preservation Association, and individual residents of the Weisner Subdivision (the plaintiffs) filed an action in the Denver District Court against the Commission, the Division, and the City of Northglenn, seeking review of the site approval under sections 24–4–106, C.R.S.1973 (1981 Supp.) and 25–8–404(1) and (2), C.R.S.1973. The defendants filed a motion to dismiss the action because the plaintiffs had failed to file their review action within 30 days after the

---

**1.** Section 25–8–704 provides:

"(1) No person shall commence the construction or expansion of any sewage treatment works intended to serve more than twenty persons unless:

(a) Site location and the construction or expansion have been approved and designs therefor reviewed by the commission. . . .

(2) In determining the suitability of a site location for any sewage treatment works, the commission shall consider the long-range comprehensive planning for the area and the consolidation of sewage treatment works to avoid a proliferation of small sewage treatment works."

**2.** In 1981 the General Assembly rewrote sections 25–8–401 through 25–8–405, C.R.S.1973 (1981 Supp.). All references in this opinion to the Water Quality Act procedural sections are to the provisions in effect at the time this case arose, unless otherwise indicated.

**3.** Section 24–4–107, C.R.S.1973 of the State Administrative Procedure Act provides:

"[W]here there is a conflict between this article and a specific statutory provision relating to a specific agency, such specific statutory provision shall control as to such agency."

Commission's determination and because the plaintiffs were not parties to the administrative proceeding, a prerequisite to judicial review. The district court granted the motion on January 23, 1980.

The Court of Appeals reversed the district court order and remanded the case, directing the district court to grant the plaintiffs' motion for change of venue.[4] The Court of Appeals, relying on *C. F. & I. Steel Corp. v. Colorado Air Pollution Control Commission*, Colo., 610 P.2d 85 (1980), ruled that formal party status is not a prerequisite to a right of judicial review if plaintiff is adversely affected or aggrieved by agency action. In addition, the Court of Appeals determined that the decision of the Commission did not become final until the Commission, on May 7, 1979, denied the application for reconsideration filed by "the inhabitants of the Weisner Subdivision." Therefore, the Court of Appeals held timely the June 6, 1979, filing of the complaint.

Because we determine that section 24–4–102(11), C.R.S.1973 requires that a person seeking judicial review of an agency action under section 24–4–106(4), C.R.S.1973 (1980 Supp.) must have sought admission or have been admitted as a party to the agency proceeding as a prerequisite to judicial review, we disapprove language in the Court of Appeals' opinion. However, Commission rules in effect at the time implied that one could not seek party status to a site approval, and the agenda notice for the hearing did not inform plaintiffs of the need for party status. Plaintiffs' reliance on published rules of the Commission and the hearing notice estop the Commission from asserting the party requirement as a defense to an action for judicial review.

In addition, we disagree with the Court of Appeals' determination that the agency action here was not final until the Commission denied the plaintiffs' request for reconsideration. Under the Water Quality Act, a request for reconsideration is not a prerequisite to judicial review, and if such request is filed and denied, the period of time during which the request for reconsideration is pending merely stays the time during which the plaintiffs may seek judicial review. Therefore, the Commission's decision on April 3, 1979, constituted final agency action, and the plaintiffs' review action was not timely.

## I.

### A.

The statutory provisions in effect at the time of this proceeding explicitly restricted judicial review of an agency action to those who were parties to the agency proceeding.[5] Section 25–8–404(1) of the Water Quality Act provided:

> "Any final order or determination by the division or the commission shall be in writing, supported by written findings, and subject to judicial review in accordance with the provisions of this article and the provisions of article 4 of title 24, C.R.S.1973."

4. On October 5, 1979, the plaintiffs filed a motion for change of venue to Weld County under section 25–8–404(2), C.R.S.1973 which states that "Any proceeding for judicial review of any final order or determination of the division or the commission shall be filed in the district court for the district in which is located the pollution source affected...." Because the district court granted the defendants' motion to dismiss, it did not rule on the plaintiffs' motion for change of venue. The Court of Appeals directed the district court to grant the change of venue request. We do not reach the question whether proper venue is jurisdictional under section 25–8–404.

5. In 1981, the General Assembly amended section 24–4–106(4), C.R.S.1973 (1981 Supp.) to distinguish for purposes of judicial review between a person affected or aggrieved by agency action and an affected or aggrieved party to a section 24–4–105 adjudicatory proceeding. The new version states as follows:

"[A]ny person adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court within thirty days after such agency action becomes effective; but, if such agency action occurs in relation to any hearing pursuant to section 24–4–105 [agency adjudicatory proceeding], then the person must also have been a party to such agency hearing."
Colo.Sess.Laws 1981, ch. 276, 24–4–106(4) at 1134–35.

The reference to article 4 of title 24 directs us to section 24–4–106(4), C.R.S.1973 (1980 Supp.) which provided:

"Any party adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court within thirty days after such agency action becomes effective.... Every party in the agency action not appearing as plaintiff in such action for judicial review shall be made a defendant."

"Party" is defined in section 24–4–102(11), C.R.S.1973 to include:

"any person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any court or agency proceeding subject to the provisions of this article."

In addition, section 25–8–401(3), C.R.S.1973 provided:

"At any hearing, any person who is affected by the proceeding and whose interests are not already adequately represented, shall have the opportunity to be a party thereto upon prior application to and in the sole discretion of and approval by the commission or division, as the case may be, and such person shall have the right to be heard and to cross-examine any witness."

The statutory requirement that party status in an agency proceeding is a prerequisite to judicial review of agency action has been accepted in numerous cases. *C. F. & I. Steel Corporation v. Colorado Air Pollution Control Commission, supra; Martin v. District Court,* 191 Colo. 107, 550 P.2d 864 (1976); *Board of County Commissioners v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244 (1974). Restricting judicial review to parties to the agency proceeding ensures that those who have an interest will bring to the agency's attention all relevant facts and considerations at the time the agency makes its decision. Moreover, the requirement of party status gives the

agency and the other participants notice of the identity and concern of interested parties. The other parties' knowledge of who must be joined as indispensable parties under section 24–4–106(4) is made possible only by the formal party status requirement.

■ In this case, the Court of Appeals held that formal party status in an agency proceeding is not a prerequisite to judicial review based upon a reading of *C. F. & I. Steel Corporation* as requiring only that a plaintiff seeking judicial review show it is adversely affected or aggrieved by an agency action. In *C. F. & I. Steel Corporation,* we refused to dismiss C. F. & I.'s complaint challenging the Air Pollution Control Commission's fugitive dust regulations merely because the company did not comply with the more stringent party status requirements of the Air Pollution Control Act which required submission of alternative regulations 20 days prior to the rule-making hearing as a condition of party status. We held that such an onerous burden to preserve one's right to seek judicial review of a rule, whether or not one disagreed with the proposed regulation, could not have been the intent of the General Assembly. The opinion in *C. F. & I. Steel Corporation* does not indicate whether C. F. & I. pursued the other requirements for obtaining party status; it simply concludes that C. F. & I. "is a party as defined by section 24–4–102(11) and as the term is used conferring a right of review in section 24–4–106(4)." *C. F. & I. Steel Corporation v. Colorado Air Pollution Control Commission, supra,* 610 P.2d at 91.[6] To the extent *C. F. & I. Steel Corporation* does not indicate that a party seeking judicial review must comply with the requirement of section 24–4–102(11) that it seek party status in an administrative proceeding, we now make clear that one must comply with the requirements for obtaining party status in adjudicatory hearings as a prerequisite to seeking judicial review under the A.P.A. The procedure to obtain

---

**6.** At the time *C. F. & I. Steel Corporation* was decided, and at the time of the hearing in the instant case, the A.P.A. defined "party" in the same way for judicial review of both rule-mak-

ing under section 24–4–103(5), C.R.S.1973 (1980 Supp.) and adjudicatory proceedings under section 24–4–105, C.R.S.1973 (1980 Supp.). This is no longer the case. *See* n. 5, *supra.*

party status is contained in section 24–4–105(2), C.R.S.1973 (1981 Supp.):

"A person who may be affected or aggrieved by agency action shall be admitted as a party to the proceeding upon his filing with the agency a written request therefor, setting forth a brief and plain statement of the facts which entitle him to be admitted and the matters which he claims should be decided."

### B.

The plaintiffs concede that they did not comply with section 24–4–105(2), but they urge that the Commission be estopped from defending their action for judicial review on the ground that the plaintiffs did not have party status in the agency proceeding because the Commission rules and agenda gave them no notice that party status was required as a condition to appeal a site approval. The Commission regulations in effect at the time of the Northglenn wastewater treatment facility site approval contemplated an informal decision-making process rather than a full adjudicatory hearing.[7] Section 2.1.4 of 5 C.C.R. 1002–1 requires adjudicatory hearings only when the Commission considers local government regulations for individual sewage disposal systems, hazardous waste permits, and as-

sessment of civil penalties. Approval of site applications is listed under 5 C.C.R. 1002–1, § 2.1.10, "Other Hearings." Section 2.1.10(C) provides an opportunity for interested persons to comment on site location applications and allows the Commission to approve site applications "according to its rules." Section 2.1.11(B) provides that "appeals of action, such as site location approvals or disapprovals, shall be pursuant to rules as promulgated by the Commission." The only other mention of site approval procedure was in 5 C.C.R. 1002–12, § 2.2.-6(4) which also referred to an appeal of a site approval "in accordance with the Commission's procedural regulations," a reference back to 5 C.C.R. 1002–1. No other site approval rules appear in the regulations, leaving as the only regulations governing procedures for site approval those which apply to adjudicatory hearings.

The proceeding at which the Northglenn wastewater treatment facility site was approved was not an adjudicatory hearing as contemplated in the Commission's regulations. The Commission approved the site after discussion at a general meeting.[8] We conclude that the Commission intended to conduct the site approval proceedings on an informal basis.[9] The Commission's rules re-

---

**7.** Compare the amendments to the Colorado Water Quality Control Act adopted since this case arose. *See* Colo.Sess.Laws 1981, ch. 334, 25–8–702, at 1336. Section 25–8–702, C.R.S. 1973 (1981 Supp.) directs the Division to approve the site of a wastewater treatment facility, with appeal of the Division's decision to the Commission. On appeal, section 25–8–702(4) requires the Commission to "hold a hearing on the site location or design in accordance with the provisions of section 24–4–105, C.R.S.1973, and the decision of the commission shall be final administrative action for the purposes of section 24–4–106, C.R.S.1973." See also the implementing regulation, 5 C.C.R. 1002–12, § 2.2.5, effective December 30, 1981. 5 C.C.R. 1002–1 has not been amended to make it consistent with the changes in 5 C.C.R. 1002–12.

**8.** The Commission approved the Northglenn wastewater treatment facility at a general meeting, and the notice of the hearing for the facility was on its general meeting agenda. 5 C.C.R. 1002–1, § 2.1.13(B). A "hearing" is defined in 5 C.C.R. 1002–1, § 2.1.2(I) to exclude any business meeting of the Commission.

However, it appears that a general meeting under 5 C.C.R. 1002–1, § 2.1.13 could include both a business meeting and a hearing.

**9.** An informal procedure short of a full-blown adjudicatory hearing may satisfy due process even though adjudicative facts are in dispute and trial procedure has been denied. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); 2 *Davis, Administrative Law Treatise* § 13.11, at 507 (1978). Here, the plaintiffs knew the nature of the adverse evidence and had an opportunity to respond to it. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Davis, Administrative Law Treatise, supra; Diver, Policymaking Paradigms in Administrative Law,* 95 *Harv.L.Rev.* 393 (1981). The usual reason for allowing informal procedure is when a trial-type procedure may overwhelm administrative facilities. *Goss v. Lopez, supra* at 583, 95 S.Ct. at 740. The Commission rules may allow full adjudicatory proceedings for certain types of decisions and not for others such as site approvals when the Commission is without facilities to afford a trial-type proceeding for each of the many site

garding formal adjudicative hearings do not apply to informal proceedings and would have been unsuitable in such an informal setting.

The prior requirement of section 24–4–106(4) that a person obtain party status in order to seek judicial review of agency decision-making did not explicitly exempt persons affected by a decision made during informal proceedings conducted in accordance with law. However, the informality of the Commission's general meeting, the absence of an agency regulation spelling out the procedures for obtaining party status to such an informal proceeding, and the failure of the Commission to provide an opportunity to become a party pursuant to the Commission's existing regulations made it difficult, if not impossible, for affected individuals to secure their rights of judicial review.

Section 2.1.6(A) of 5 C.C.R. 1002–1 requires that all "hearings" of the Commission except for emergency rule-making be preceded by written notice containing a description of how an interested person may apply to become a party to the proceedings. Section 2.1.7(A) of 5 C.C.R. 1002–1 requires that the notice for an adjudicatory proceeding set a date, not less than ten days prior to the hearing, by which application for party status must be filed with the agency. Under section 2.1.7(B) of 5 C.C.R. 1002–1, the application to be made a party must indicate the general nature of the testimony to be presented. Here, notice of the treatment facility site approval was contained in the agenda for the Commission's general meeting. The agenda did not include a description of proper application procedures, nor did it set a date for filing to obtain party status. Consistent with these omissions, 5 C.C.R. 1002–1, § 2.1.10(D) states that informational hearings to facilitate public comment, such as site application hearings described in the immediately preceding subsection (C), "will be informal; *there will be no parties* and no one will bear the burden of proof." (Emphasis added.)

■■ The plaintiffs here were not given adequate notice by the Commission's rules that party status was required or allowed at a site approval hearing. Estoppel may be available against a governmental agency to prevent manifest injustice if the plaintiffs can show reasonable reliance on agency action. *University of Colorado v. Silverman*, 192 Colo. 75, 555 P.2d 1155 (1976); *Gray v. Regional Transportation District*, 43 Colo. App. 107, 602 P.2d 879 (1979). Therefore, on the facts of this case, the Commission is estopped from claiming that the plaintiffs did not have standing to seek judicial review under section 24–4–106(4). Our conclusion, which is limited to these facts, does not detract from the rule that one who wishes to appeal an agency action must comply with the requirements for obtaining party status in adjudicatory hearings. We note that the new Commission rule, 5 C.C.R. 1002–12, § 2.2.5, effective December 30, 1981, does not contain the language which misled the plaintiffs in this case.

II.

The Court of Appeals held that the denial by the Commission on May 7, 1979 of a request by some of the plaintiffs for reconsideration of the Commission's decision recommenced the 30-day period within which a party to an agency action may institute a proceeding for judicial review of a final order of the agency. Section 25–8–404(2), C.R.S.1973 and section 24–4–106(4), C.R.S. 1973 (1981 Supp.). The Court of Appeals did not consider the action of the Commission final until the request for reconsideration was denied. We conclude otherwise.

Section 25–8–404(2) of the Water Quality Act provides that the 30-day period for seeking judicial review of a final order of the Commission

"shall be *stayed* while any application for a hearing, rehearing, or reconsideration is pending pursuant to section 25–8–403."

(Emphasis added.) Section 25–8–403 provides that:

---

approvals before it every month. The current site approval rules in amended section 25–8–702, C.R.S.1973 (1981 Supp.) mix an informal

procedure at the Division level with a formal adjudicatory hearing before the Commission, if requested. *See* n. 7, *supra*.

"During the time permitted for seeking judicial review of any final order or determination of the commission or division, any party directly affected by such order or determination *may apply* to the commission or division, as appropriate for a hearing or rehearing with respect to, or reconsideration of, such order or determination. The determination by the commission or division of whether to grant or deny the application for a hearing, rehearing, or reconsideration shall be made within ten days after receipt by the commission or division of such application.... If the application for a hearing, rehearing, or reconsideration is *granted*, then the order or determination to which such application pertains shall not be considered final for purposes of judicial review...."

(Emphasis added.)

The Water Quality Act does not require that a request for reconsideration be filed before a party seeks judicial review. However, if a party chooses to request reconsideration, the time for seeking judicial review is merely stayed while the Commission decides whether to grant the request. Only if the Commission grants the request is the original order of the Commission not considered final. If the Commission denies the request, the original order of the Commission is the final order referred to in section 25–8–404(2).

▮ The Water Quality Act provisions are consistent with the A.P.A. Section 24–4–106(2), C.R.S.1973 provides that final agency action shall be subject to judicial review within 30 days "whether or not an application for reconsideration has been filed, unless the filing of an application for reconsideration is required by the statutory provisions governing the specific agency." Because the Water Quality Act does not make mandatory the filing of a request for reconsideration, the initial site approval by the Commission was final agency action for purposes of judicial review. *See also* 5 C.C.R. 1002–12, section 2.2.6(4).

Section 25–8–404(2), C.R.S.1973, indicates that the 30-day period for seeking judicial review commences when the agency order is served upon the party affected. Here, the Commission approved the Northglenn application on April 3, 1979, and notified Northglenn by letter of April 5, 1979. Section 24–4–105(16), C.R.S.1973 allows service by first-class mail and makes a decision effective as to a party on the date the decision is mailed. With April 5, 1979 as the proper date of service, the 30 days would have expired on May 5, 1979, in the absence of an intervening request for reconsideration. On May 2, when some of the plaintiffs filed a request for reconsideration, the 30-day period was stayed. This stay continued until May 7, 1979, when the Commission denied the request. The 30-day period resumed on May 7 and expired on May 10, 1979. The complaint here was not filed until June 6, 1979.

The plaintiffs' failure to file their complaint within 30 days of the Commission's action constitutes a jurisdictional defect that requires dismissal. *Enriquez v. Merit System Council*, 197 Colo. 14, 589 P.2d 492 (1979); *Civil Service Commission v. District Court*, 186 Colo. 308, 527 P.2d 531 (1974); *Liebhardt v. Department of Revenue*, 123 Colo. 369, 229 P.2d 655 (1951); *Greyhound Racing Association v. Colorado Racing Commission*, 41 Colo.App. 319, 589 P.2d 70 (1978); *Cissell v. Colorado State Board of Assessment Appeals*, 38 Colo.App. 560, 564 P.2d 124 (1977).

Judgment reversed.