NATIONAL ADVERTISING COMPANY,
a Delaware Corporation,
Plaintiff-Appellee,

v.

The DEPARTMENT OF HIGHWAYS of
the State of Colorado, State of Colorado, and Thomas E. Einboden, Defendants-Appellants.

No. 84SA116.

Supreme Court of Colorado,
En Banc.

May 12, 1986.

Goldstein & Armour, P.C., Philip Munishor, Alan A. Armour, Denver, for plaintiff-appellee.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., William Levis, Mark E. May, Asst. Attys. Gen., Denver, for defendants-appellants.

ROVIRA, Justice.

This case is an appeal by the Colorado Department of Highways (Department) from an order by the Denver District Court, holding that the Outdoor Advertising Act, sections 43–1–401 to –420, 17 C.R.S. (1984) (Act), was unconstitutionally retrospective in its operation.[1] The court also held that notice procedures used by the Department to inform billboard owners of alleged violations of the Act denied the owners due process of law. We reverse.

## I.

This action was based on stipulated facts. The plaintiff, National Advertising Company (National), leased property from I–70/GCRC at 23100 East Colfax Avenue, a commercially zoned site in unincorporated Arapahoe County within 500 feet of the widening for the exit from Interstate Highway 70 eastbound at Gun Club Road. National obtained a permit from Arapahoe County for erection of a billboard on the leased premises in March 1981. Although agreements with potential advertisers and approval of the billboard by National's home office were obtained prior to July 1, 1981, the parties stipulated that "construction [of the billboard] was not commenced until after July 1, 1981, and was completed on August 5, 1981." In August 1981, representatives of the Department informed National that they believed the sign was unlawful.

In September 1981, the Department issued a notice of violation of the Outdoor Advertising Act, section 43–1–412(2)(a), 17 C.R.S. (1984), to I–70/GCRC, the owner of the billboard site. The Department did not send a copy of the notice to National. I–70/GCRC did not contest the notice, and on February 26, 1982, the Department sent I–70/GCRC a termination order requesting permission to remove the billboard. Permission was denied.

National applied to the Department for a sign permit on March 9, 1982, pursuant to section 43–1–408, 17 C.R.S. (1984). National also filed this action for declaratory and injunctive relief against the Department two weeks later. On June 20, 1983, the Department denied National's permit application. National did not appeal this denial.[2] However, the billboard in question has not been removed.

The case was tried on the basis of the facts stipulated. The parties introduced no additional testimony. National challenged the application to its billboard of sections 43–1–401 to –420, 17 C.R.S. (1984) (which became effective when sections 43–1–401 to –426, 17 C.R.S. (1973 & 1980 Supp.), were repealed and reenacted on July 1, 1981) and regulations enacted pursuant to those sections. In accordance with C.R.C.P. 57 and sections 13–51–101 to –115, 6 C.R.S. (1973), National sought a declaration that the 1981 statute and rules were invalid and an in-

---

1. The Department filed a notice of appeal with this court. We accepted jurisdiction pursuant to section 13–4–102(1)(b), 6 C.R.S. (1973), since the judgment of the trial court called into question the constitutionality of the Outdoor Advertising Act.

2. Although National did not exercise its right under section 43–1–412, 17 C.R.S. (1984), to a hearing on the denial of its permit application, the Department has not challenged this action on the basis that National failed to exhaust its administrative remedies. *See Hoffman v. Colorado State Bd. of Assessment Appeals,* 683 P.2d 783 (Colo.1984).

junction preventing its advertising sign from being removed.

The trial court noted that the parties' stipulation of fact raised seven distinct issues: First, whether the permit requirement in the reenacted Outdoor Advertising Act, sections 43–1–401 to –420, 17 C.R.S. (1984), constituted retrospective and *ex post facto* legislation in violation of article I, section 10, of the United States Constitution and article II, section 11, of the Colorado Constitution; second, whether "the regulation at issue herein as enacted [apparently Roadside Advertising Rules and Regulations § IX(A)(3)(b)(2), 2 C.C.R. 601–3 (1977)] is an unlawful exercise of delegated legislative power"; third, whether the regulation at issue has been continuously effective so as to prohibit National's sign; fourth, whether the regulation, if valid, does in fact prohibit the sign; fifth, whether the Department is barred from requiring removal of the sign on the basis of equitable estoppel; and sixth, whether the sign requires a permit and, if so, whether the Department should be required to issue a permit to National. Finally, the stipulation raised the issue of whether National was entitled to notice and hearing pursuant to section 43–1–412, 17 C.R.S. (1984), and, if so, whether the Department's failure to provide such notice constituted a denial of due process.

The trial court ruled that the Outdoor Advertising Act, as reenacted on July 1, 1981, and as interpreted by the Department, constituted retrospective and *ex post facto* legislation in violation of article II, section 11, of the Colorado Constitution because it took away a vested right of National. The court held that the sign complied with pre-1981 state law, that the Arapahoe County permit was sufficient and that no state permit was required. The court also held that the Department's fail-

ure to notify National in September 1981 constituted a denial of due process. On the basis of these holdings, the court concluded that the sign need not be removed and declined to address the remaining issues raised by the stipulation.

On appeal, the Department argues that the billboard was illegal under the pre-1981 Outdoor Advertising Act and regulations lawfully promulgated thereunder. It therefore contends that the reenactment was not retrospective or *ex post facto* since National could not have relied on the provisions of the prior law. The Department also argues that because the sign in question is still standing there was no taking to trigger a due process violation. We will consider these arguments in the order stated.

## II.

The Department first challenges the trial court's holding that reenactment of the Outdoor Advertising Act constituted unconstitutionally retrospective and *ex post facto* legislation, in violation of article II, section 11, of the Colorado Constitution, in that the reenacted Act took away rights that vested under the previous version of the Act when National signed its lease with I–70/GCRC. In holding that "State law permitted the sign in question and a permit was issued based on state law," the trial court apparently concluded that the pre-1981 version of the Outdoor Advertising Act did not give the Department the authority to prohibit the sign.[3] We disagree.

The Outdoor Advertising Act, both as it existed on June 30, 1981, §§ 43–1–401 to –426, 17 C.R.S. (1973 and 1980 Supp.) (Old Act), and after reenactment on July 1, 1981, §§ 43–1–401 to –420, 17 C.R.S. (1984) (New Act), was the state's response to the

---

**3.** The reenacted version of the Outdoor Advertising Act added a permit requirement for all advertising devices located in industrial or commercial areas adjacent to the state highway system, § 43–1–407(1)(c), 17 C.R.S. (1984), and prohibited issuance of a permit for any advertising device that did not conform to size, lighting, or spacing standards set forth in Department rules

and regulations adopted prior to the erection of the advertising device, § 43–1–411(6), 17 C.R.S. (1984). Since the Department's 1976 Roadside Advertising Rules and Regulations prohibited the sign in question, *see* Rule IX(A)(3)(b)(2), 2 C.C.R. 601–3 (1977), the Department argues that National could not be granted the permit required under the reenacted act.

Federal Highway Beautification Act of 1965, 23 U.S.C. § 131 (1982) (Federal Act). The Federal Act established standards for billboards along the federal interstate highway system and ordered that ten percent of federal highway funds be withheld from states that were not in compliance with those standards. 23 U.S.C. § 131(b) (1982). The stated purpose of both the Old and New acts was compliance with the Federal Act so that the state would receive its full share of federal highway funds. § 43-1-407(1), 17 C.R.S. (1980 Supp.) (Old Act); § 43-1-402(1), 17 C.R.S. (1984) (New Act). Pursuant to that goal, both versions of the Act authorized agreements between the Department and the United States Department of Transportation to carry out "national policy," and authorized promulgation of regulations to enforce the federal standards. §§ 43-1-404, -419, 17 C.R.S. (1973) (Old Act); § 43-1-415, 17 C.R.S. (1984) (New Act); *see also* 23 U.S.C. § 131(d) (1982) (mandating agreements between states and the Secretary of Transportation). Both versions of the Act also added that "nothing in this part 4 shall be construed to permit advertising devices to be erected or maintained which would disqualify the state for payments made available to those states which meet federal standards of roadside advertising control along the interstate system." § 43-1-404(3), 17 C.R.S. (1973) (Old Act); § 43-1-415(2), 17 C.R.S. (1984) (language in New Act nearly identical to that quoted above).

Both versions of the Outdoor Advertising Act, by authorizing federal-state agreements and calling for conformance with federal policy, gave the Department of Highways authority both to enter into agreements with the federal government and to promulgate regulations to enforce the provisions of those agreements. Pursuant to this authority, Colorado entered into such an agreement in 1971. *Agreement between Colorado Department of Highways and United States Department of Transportation on Control of Outdoor Advertising in Areas Adjacent to the Interstate Highway System* (July 9, 1971) (Agreement). Failure to comply with the

provisions of the Agreement could, at the discretion of the Secretary of Transportation, result in a ten percent reduction in federal highway fund disbursements to Colorado. 23 U.S.C. § 131(b)–(d) (1982); *see* Agreement at 2.

In setting forth criteria for signs located near interstate highways, the Agreement states:

> Outside of incorporated villages and cities, no structure may be located adjacent to or within 500 feet of an interchange, intersection at grade, or safety rest area. Said 500 feet to be measured along the Interstate or freeway from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.

*Id.* at 5. In 1976, the Department promulgated regulations to enforce the federal policy. Section IX(A)(3)(b)(2) of those regulations is identical to the language in the Agreement quoted above. Rule IX(A)(3)(b)(2), 2 C.C.R. 601–3 (1977). Identical language also appears in both the emergency regulations promulgated on July 29, 1981 and the new permanent regulations published in 1983. Rule VII(B)(3)(a)(2), 2 C.C.R. 601–3 (1981 emergency & 1983). This language clearly prohibits the sign in question.

 National relies on Old Act section 43-1-408, 17 C.R.S. (1973 & 1980 Supp.), in contending that the prohibition of signs within industrial or commercial areas exceeded the regulatory authority granted under the Old Act. That section reads, in pertinent part:

> **43-1-408. Advertising devices prohibited—exceptions.** (1) No person shall erect or maintain any advertising device as defined in section 43-1-402(1), which is designed, intended, or used to advertise or give information in the nature of advertising to the public traveling on the main-traveled way of the state highway system, as defined in section 43-2-101 [including interstate highways, federal-aid primary and secondary roads, and other roads designated as state high-

ways], unless the advertising device is erected and maintained in accordance with the provisions of this part 4. Any such advertising device which is visible to motorists traveling on the main-traveled way of the state highway system shall be presumed to be of the type prohibited in this part 4. The following shall be exempt from the provisions of this section:

. . . . .

(d) Advertising devices which are located in areas which are zoned industrial or commercial under authority of state law....

§ 43–1–408(1)(d), 17 C.R.S. (1973 & 1980 Supp.). National argues that this exemption prohibits the Department from regulating such signs. However, this provision must be read in the context of the remainder of the Act. *See Alpert Corp. v. Department of Highways*, 199 Colo. 4, 6, 603 P.2d 944, 946 (1979) ("advertising devices located in industrial or commercial areas are exempt from the provisions of the section [Old Act section 43–1–408] *so long as* the devices conform with other provisions of the Act." (emphasis added) ). Since section 43–1–404(3), 17 C.R.S. (1973), prohibits construction that would deprive the state of federal highway funds, and since failure to regulate signs in commercial areas adjacent to the interstate highway system could result in a withholding of ten percent of those funds, the principles of statutory construction require that the section 408(1)(d) exception be read as applying only to those industrial or commercial areas that are adjacent to state highways other than interstate highways. *See Alpert*, 199 Colo. at 6, 603 P.2d at 946 ("If provisions of the statute may be construed so that an inconsistency will be avoided, it is the duty of the court to so construe them."). Thus, the exemption set forth in section 43–1–408(1)(d), 17 C.R.S. (1973 & 1980 Supp.), does not apply to commercial or industrial areas adjacent to interstate highways, and therefore does not deny the Department authority to regulate National's billboard under the Old Act.

■ Since the Old Act both authorized promulgation of regulations consistent with national highway policy, § 43–1–404(1), 17 C.R.S. (1973), and ordered that the provisions of the Act itself be strictly construed so as to prevent Colorado from being disqualified for any portion of federal highway funds due to failure to conform to federal requirements, § 43–1–404(3), the Old Act gave the Department authority to promulgate the regulations in question and provided a sufficient standard for the Department to validly exercise its rule-making power. *See Colorado Auto & Truck Wreckers Ass'n v. Department of Revenue*, 618 P.2d 646, 651 (Colo.1980) (the legislature may delegate power to promulgate rules and regulations so long as it provides the agency with adequate standards for exercising its rule-making function); *see also Robbins v. Mississippi State Highway Comm'n*, 369 So.2d 765 (Miss.1979) (holding that a statute similar to the Outdoor Advertising Act authorized promulgation of regulations to enforce an agreement between Mississippi and the Secretary of Transportation). Because those regulations clearly prohibit the sign in question, the trial court erred in concluding that the sign was permitted under state law prior to July 1, 1981. Moreover, since the billboard was prohibited by valid regulations promulgated under the Old Act, plaintiffs had no vested right to erect their sign. Thus, the repeal and reenactment of the Outdoor Advertising Act did not interfere with plaintiff's vested rights under the Old Act. The New Act and the regulations promulgated thereunder are therefore not retrospective or *ex post facto* as applied to plaintiff since the New Act's prohibition against issuing a permit on the basis of prior regulations, § 43–1–411(6), 17 C.R.S. (1984), was no more restrictive than the prohibition against erection of the sign contained in the prior regulations themselves. *P–W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo.1982) (only those statutes that take away or impair vested rights are deemed unconstitutionally retrospective).

■ National also contends that the emergency regulations adopted on July 29, 1981 were invalid, since no emergency then existed to justify a declaration of emergency. *See* § 24–4–103(6), 10 C.R.S. (1982). It therefore argues that the regulatory prohibition cannot be applied to National's billboard since the regulation was not continuously effective. However, any consideration of the validity of the emergency regulations will not avail National, since both the 1977 regulations and the 1981 emergency regulations contain the identically worded prohibition. Rule IX(A)(3)(b)(2), 2 C.C.R. 601–3 (1977); Rule VII(B)(3)(a)(2), 2 C.C.R. 601–3 (1981 emergency). The pre-reenactment regulations were only superseded by the promulgation of new emergency regulations. If the new regulations were invalid, the prior regulations would have remained in force until such time as new regulations were validly promulgated, since the old regulations would have never been effectively superseded. Thus, even if we assume that the emergency regulations were invalidly promulgated, the prior regulations would have remained in effect after July 29, 1981, under the regulatory authority provided by New Act section 43–1–415(1), 17 C.R.S. (1984). Since the sign in question is clearly invalid under the 1977 regulation, we need give no further consideration to National's challenge to the validity of the newly promulgated regulations.

### III.

■ The Department also challenges the trial court's conclusion that its failure to notify National that the billboard was not in compliance deprived National of due process of law as guaranteed by the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution. The Department argues that due process was not violated since National received adequate notice prior to any deprivation. We agree.

Due process requires that the owner of property be notified of the state's intent to deprive it of that property, and that the owner be given an opportunity to be heard. *See, e.g., City and County of Denver v. Eggert,* 647 P.2d 216 (Colo.1982); *Patterson v. Cronin,* 650 P.2d 531 (Colo.1982). However, as the Department points out, there has as yet been no deprivation of property in this case since National's sign remains standing. Although it did not receive the initial notice of noncompliance, National, through its permit application and the resulting permit process, did receive adequate notice of the Department's belief that the sign did not comply with the Act. The permit process and the current judicial proceedings have also afforded National ample pre-deprivation opportunity to be heard. Thus, since National has to date suffered no deprivation of, or interference with the use of, its property, and since the subsequent notice associated with its permit application corrected any defect in the Department's initial notice of noncompliance with the Outdoor Advertising Act, we reject National's due process claim.

### IV.

■ National contends that even if its sign was prohibited under valid regulations, the State of Colorado is estopped from denying compliance with the Outdoor Advertising Act, since Arapahoe County had already issued a permit allowing for construction of the billboard.[4] In making this argument, National asserts that Arapahoe County is a division of the State of Colorado. As the Department points out, this characterization is incorrect. Although the Department is a division of the State of Colorado pursuant to the Administrative Organization Act of 1968, § 24–1–126, 10 C.R.S. (1982), counties are political subdivisions of the state. *Board of County Commissioners v. Love,* 172 Colo. 121, 125, 470 P.2d 861, 862 (1970). The duties and responsibilities of Arapahoe County

**4.** The trial court declined to address this issue since it held for National on other grounds. Because we conclude that the trial court's rulings on the reenacted Outdoor Advertising Act and National's due process claim were incorrect, we must consider National's equitable estoppel claim.

are therefore separate and distinct from those of the Department. National cannot have reasonably relied on issuance of a *county* permit in concluding that its sign complied with the requirements of the *state* Outdoor Advertising Act. *See Colorado Water Quality Control Comm'n v. Town of Frederick,* 641 P.2d 958, 964 (Colo.1982) ("Estoppel may be available against a governmental agency to prevent injustice *if* the plaintiffs can show *reasonable* reliance on agency action." (emphasis supplied)). Thus, National's government estoppel claim lacks merit.

The judgment of the district court is reversed, and the case remanded for entry of judgment consistent with this opinion.