549 P.2d 791 (1976)
Jack EVERT, Individually and on behalf of all other persons similarly situated and the City and County of Denver, a Municipal Corporation, Plaintiffs-Appellants,
v.
Gail F. OUREN et al., Defendants-Appellees.
No. 75-399.
Colorado Court of Appeals, Div. III.
March 4, 1976.
Rehearing Denied March 25, 1976.
Certiorari Denied May 17, 1976.
*792 Max P. Zall, City Atty., Frank A. Elzi, Asst. City Atty., Denver, for plaintiffs-appellants.
John D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Charles B. Lennahan, John Patrick Barry, Sp. Asst. Attys. Gen., Denver, for defendants-appellees.
Selected for Official Publication.
PIERCE, Judge.
Plaintiffs, City and County of Denver (Denver), and employees of the Denver Department of Social Services (Denver Social Services) appeal from a judgment in favor of defendant Colorado State Board of Social Services (State Board).
This was a class action on behalf of Denver Social Services employees, who, *793 along with Denver, sought to compel the State Board to adopt a wage schedule for the employees that had been prepared by Denver Career Services (Career Services). The Career Services wage schedule was prepared using data from a 1974 wage survey conducted by Career Services under methodology approved by the Director of the State Department of Personnel. The State Board refused to adopt the wage schedule prepared by Career Services; instead, it implemented a schedule of its own devising using data from an earlier wage survey conducted by the State Department of Personnel. This action was then commenced as a judicial review of that agency action. Defendant State Board filed a motion seeking: 1) Dismissal of Denver as a party plaintiff based on an alleged absence of standing; 2) affirmance of the State Board's action in refusing to adopt the wage schedule prepared by Career Services; and 3) a declaration by the trial court that the authority to set compensation schedules for Social Services system employees within the several county departments rests solely with the State Board. The trial court granted the motion in every particular. We affirm.
In Colorado, social services are a state program administered by the counties through the various county social services departments. The counties are reimbursed by the state for a substantial portion of the administrative costs of the program; the state, in turn, receives substantial federal grants which help fund the overall system. See Colorado State Board of Social Services v. Billings, 175 Colo. 380, 487 P.2d 1110. Federal funds are insufficient, however, to fully fund the state social services program. Therefore, a portion of the expense of the program is born by the state, which funds the county programs with monies appropriated by the state legislature. It is within this context that plaintiffs' arguments must be evaluated.
We need not consider whether Denver lacks standing, since here there are other plaintiffs whose standing has not been questioned, and whose contentions or error are identical with those asserted by Denver and must therefore be considered without regard to the issue of standing. Thus, we proceed to the merits of the case.
Plaintiffs first contend that Denver has the absolute right to set the salaries of all of its employees without regard to the fact that those employees also comprise a component part of the overall state social services system, the control of which is entrusted to the direction of the State Board. They come to this conclusion based on an interpretation of Article XX of the Colorado Constitution. Colo. Const. Art. XX, Sec. 2, reads in pertinent part, as follows:
"If any officer of said city and county of Denver shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter, or, in the case of officers not in the classified civil service, by ordinance within limits fixed by the charter . . . ."
Colo.Const. Art. XX, Sec. 6, provides that Denver shall have the power to control:
"The creation and terms of municipal officers, agencies and employments; the definition, regulation and alteration of the powers, duties, qualifications and terms or tenure of all municipal officers, agents and employees . . . ."
Plaintiffs argue that these constitutional provisions give Denver the absolute right to set the salaries for all of its employees despite statutory law to the contrary, and hence, the State Board was obliged to adopt the Career Services wage schedule submitted by Denver. We disagree.
Contrary to plaintiffs' argument, the quoted portions of Colo.Const. Art. XX, Sec. 2, pertain merely to the manner in which "officers" of Denver may be compensated. The employees in question here are not "officers" of Denver for the purposes of the constitutional provision.
*794 The terms "officer" and "employee" are not interchangeable, and must be distinguished. See Denver v. McNichols, 129 Colo. 251, 268 P.2d 1026.
Nor does Colo.Const. Art. XX, Sec. 6, support plaintiffs' position. This constitutional provision relates only to the establishment of conditions of employment for "municipal" officers or employees, rather than persons engaged in activities of a statewide concern, as are involved here. Thus, despite this constitutional provision, Denver is wholly amenable to state control in all matters of statewide import, as distinguished from matters of a purely local or municipal character. Keefe v. People, 37 Colo. 317, 87 P. 791. Where the area of concern is not of a purely local or municipal nature, Denver derives no authority from Art. XX, Sec. 6. In those areas of state control Denver is merely an agency of the state, subject to control by it. Davis v. Denver, 140 Colo. 30, 342 P. 2d 674. The social services system is a matter of statewide rather than local or municipal concern. Board of County Commissioners v. State Board of Social Services, 186 Colo. 435, 528 P.2d 244; § 26-1-102, C.R.S.1973. See also People ex rel. Public Utilities Commission v. Mountain States Telephone & Telegraph Co., 125 Colo. 167, 243 P.2d 397. Thus, Denver is without the authority to set the salaries of the employees in the county social services department in the absence of statutory authorization to do so.
In this regard, plaintiffs contend that § 26-1-108(2), C.R.S.1973, is tantamount to such statutory authorization in that this provision compels the State Board to adopt the schedule submitted by the county. We disagree.
Section 26-1-108(2), C.R.S.1973, states in pertinent part as follows:
"The state board shall fix minimum standards and qualifications for personnel based upon training and experience deemed necessary to fulfill the requirements and responsibilities for each position, and establish salary schedules based upon prevailing wages for comparable work within each county or district or region where such data is available and is collected and compiled in a manner approved by the state personnel director. The rules and regulations issued by the executive director pursuant to law shall not be in conflict with board rules. The rules of the state department shall be binding upon the several county departments."
We reject plaintiffs' contention that this statute requires adoption by the State Board of the wage schedule submitted by Denver. Our contrary conclusion is not altered by the fact that the data upon which that wage schedule was based was collected and compiled in a manner approved by the State Personnel Director.
First, the statute merely calls upon the State Board to establish wage schedules based upon data, if available, as to prevailing wages for comparable work within each region. That is, it only directs the State Board to consider relevant data in the preparation of its wage schedule. It leaves to the State Board the task of preparing wage schedules, and does not empower Denver or any other county to do anything more than submit suitable data for the State Board's consideration. No such data was ever submitted to the State Board by Denver. Rather, Denver had the compiling agency, Career Services, obtain the data and prepare its own wage schedule for the employees. That procedure is not supported by the statutory language.
However, even if plaintiffs had submitted the appropriate data to the State Board, the Board was not compelled thereafter to adopt the wage schedule in complete accordance with such data. Section 26-1-108(2), C.R.S.1973, mandates that the Board establish salary schedules "based upon" the prevailing wages for comparable work within each region. It does not require that the State Board provide salaries in every respect identical with those *795 prevalent in a particular area. This statutory language merely establishes a standard for the State Board to follow in setting the salaries of social services employees, directing the State Board to consider prevailing wages within each respective region as an initial or starting point for calculation. See State ex rel. Snidow v. State Board of Equalization, 93 Mont. 19, 17 P.2d 68. The statute therefore grants to the State Board a considerable degree of discretion in determining wage schedules for employees of the social services system. Relying on the case of Smith v. Miller, 153 Colo. 35, 384 P.2d 738, plaintiffs contend that such authority is not given the State Board but rather has been entrusted to Denver and the other counties. However, we find that case, as it has been restricted by Wadlow v. Kanaly, 182 Colo. 115, 511 P.2d 484, inapposite to the facts before us.
Plaintiffs further argue, however, that the State Board abused its discretion because the wage schedule adopted differed substantially from the wage survey data upon which it was based. They contend that when insufficient sums have been appropriated, the State Board must nonetheless meet the proposed wage increases submitted by the counties, and may only reduce services or the number of employees in order to make ends meet. We again disagree.
As we have stated, the State Board is entrusted with the ultimate responsibility for the conduct of the fiscal affairs of the social services system, § 26-1-108(1)(c) (IV), C.R.S.1973. The funds for the wages of Denver social services employees come from legislative appropriations for state reimbursement of county expenses. See §§ 26-1-121(1)(a) and 26-1-122(3)(c), C.R.S.1973. Thus, if appropriations are insufficient in a given year, it is fully within the discretion accorded the State Board in § 26-1-108(2), C.R.S. 1973, to consider this as a factor in establishing wage schedules.
That is precisely what took place here. Because of a shortage of funds, the State Board adjusted certain of the proposed wage increases, thereby affecting a large number of employees in each of the counties. That procedure was entirely within the ambit of its authority. Contrary to plaintiffs' contention, the State Board was not at liberty to grant substantial wage increases to Denver employees, thereby necessitating curtailment of funds or services to the other counties merely because Denver submitted a proposed wage schedule incorporating such suggested wage increases. See §§ 26-1-122(3)(c) and (5), C.R.S.1973. Thus, the State Board's adjustment of the proposed wage increases merely represented an exercise of the fiscal responsibility entrusted to it, and, in the light of the shortage of available funds, did not constitute an abuse of discretion.
Judgment affirmed.
SMITH and BERMAN, JJ., concur.