NATIONAL ADVERTISING COMPANY, a corporation; Edgar Dill; and Boychuk Construction, Inc., a corporation, Plaintiffs–Appellants,

v.

The DEPARTMENT OF HIGHWAYS OF the STATE OF COLORADO; the State of Colorado; Frank L. Sollee; Ronald E. Richards; and Thomas Einboden, Defendants–Appellees.

No. 86SA102.

Supreme Court of Colorado,
En Banc.

March 7, 1988.

Goldstein & Armour, P.C., Alan A. Armour, Darrel L. Campbell, Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Lynn B. Obernyer, First Asst. Atty. Gen., Denver, for defendants-appellees.

QUINN, Chief Justice.

The two questions raised in this appeal are (1) whether the control of outdoor advertising signs located within a home-rule municipality along roads of the state highway system is a matter of exclusively local or exclusively statewide concern, or is a matter of mixed local and statewide concern, and (2) whether the State Department of Highways (department) should be estopped from denying a permit for an outdoor advertising sign because a home-rule municipality already had issued a building permit for the sign. The district court held that the control of outdoor advertising is a matter of mixed statewide and local concern and that, consequently, the permit provisions of the Outdoor Advertising Act, §§ 43-1-401 to -420, 17 C.R.S. (1984 & 1987 Supp.), and the Roadside Advertising Regulations promulgated by the department, 2 Colo.Code Regs. § 601-3 (1983), superseded a conflicting provision of the city of Colorado Springs sign code. In so holding, the court implicitly rejected the claim that the department was estopped from challenging the validity of the sign on the basis of a sign permit issued pursuant to the municipal sign code. We affirm the judgment of the district court.

I.

This action was commenced in the District Court of El Paso County by National Advertising Company (National), Boychuk Construction, Inc., and Boychuk's president, Edgar Dill, against the department and three of its officers charged with the enforcement of the Outdoor Advertising Act. The complaint sought declaratory and injunctive relief against the department and its employees on the basis that the Home Rule Amendment to the Colorado Constitution, Colo. Const. art. XX, rendered the provisions of the act void and unenforceable against National's sign located within the home-rule municipality of Colorado Springs. The complaint raised the alternative claim that the department should be estopped from enforcing the act because the city of Colorado Springs had issued to National a building permit for the sign.[1] The department and its employees filed an answer to the complaint. The parties then agreed to submit the case for trial to the court on the basis of the following stipulated facts.

Colorado Springs is a home-rule city. In its charter, the city has reserved to itself legislative, executive, and judicial powers over "all matters of local and municipal government," Charter, City of Colorado Springs, art. I, § 2(e) (1980), and, as well, the power "to supersede any law of this state, now or hereafter enforced, insofar as it applies to local or municipal matters," id. at art. XIX, § 158.

In August 1983, National applied to the Pikes Peak Regional Building Department, which was the delegated licensing entity for building activities within the city of Colorado Springs, for a building permit to erect a sign. The building permit was issued, and on September 8, 1983, National leased from Boychuk Construction a parcel of land adjacent to State Highway 83, located within the municipal boundaries of Colorado Springs, and in an area zoned for industrial or commercial uses subsequent to January 1, 1970. The lease between National and Boychuk Construction obligated National to pay Boychuk $18,000 for the leased premises over a ten-year period. After it obtained the building permit for the sign, National leased to U.S. Home Corporation for one year the advertising faces on the sign structure for $22,000. National then erected an outdoor advertising sign, in accordance with its building permit, at a cost of approximately $25,000.

At no time did National apply to the department for a sign permit, and, according to the stipulation, even if National had made such an application, the department

1. National originally included in its complaint claims for compensatory and exemplary damages against the defendants, but subsequently stipulated to the withdrawal of these claims.

would not have issued a permit due to the fact that the National sign exceeded the size limitations prescribed by the Outdoor Advertising Act. *See* § 43–1–404(1)(e)(I)(A), 17 C.R.S. (1984) (sign located along primary or secondary highways in areas zoned for industrial or commercial uses may not be larger than 150 square feet); 2 Colo.Code Regs. § 601–3(VII)(B)(1)(b) (1983) (same). On January 9, 1984, the department served National with a "Notice of Violation of the Outdoor Advertising Act," based in part on the size of its sign.[2]

In ruling on the stipulated facts, the district court began its analysis by noting that in matters of both statewide and local concern a state statute and a municipal ordinance may coexist as long as they do not conflict, but that if they do conflict, the state statute supersedes the municipal ordinance. *See, e.g., Delong v. City and County of Denver*, 195 Colo. 27, 576 P.2d 537 (1976). The court then noted that, although zoning is generally considered to be a matter of exclusively local concern, the control of outdoor advertising devices located within a municipality and along the state highway system is clearly a matter of statewide interest, as manifested by the General Assembly's express declaration in the Outdoor Advertising Act. Since, in the district court's view, a clear conflict existed between the Colorado Springs sign code, which permitted the erection of National's sign, and the Outdoor Advertising Act, which prohibited the erection of the sign without a sign permit issued by the department, the court ruled that the act superseded the sign code. The court accordingly concluded that the act applied to National's

sign and, since National had not obtained a sign permit from the department, the court ordered National to remove the sign. Although the court did not specifically address National's claim that the department should be estopped from enforcing the act against National's sign, the court's order that National remove the sign amounted to an implicit rejection of the estoppel claim.

█ In appealing the judgment, National, relying on the Home Rule Amendment in Article XX of the Colorado Constitution, initially claims that the control of advertising signs located within a home-rule municipality along roads of the state highway system is a matter of exclusively local concern and thus not subject to the regulatory scheme created by the Outdoor Advertising Act.[3] National next argues that the issuance of a permit to National, pursuant to the Colorado Springs sign code, estops the department from enforcing the Outdoor Advertising Act and Roadside Advertising Regulations against National's sign.

## II.

█ We first consider National's claim that the control of outdoor advertising signs located within a home-rule municipality along roads of the state highway system is a matter of exclusively local concern and is thus exempt from the provisions of the Outdoor Advertising Act. The express purpose of Article XX of the Colorado Constitution is "to grant and confirm to the people of all municipalities coming within its provisions the full right of self-govern-

2. While the notice cited various provisions of the Outdoor Advertising Act and the Roadside Advertising Regulations as the source of the alleged violation, the parties stipulated that the sign structure was in an area zoned for industrial or commercial uses subsequent to January 1, 1970, and was impermissible under the act and the regulations. The parties also stipulated that National, in addition to not requesting a sign permit from the department, did not request a hearing on the alleged violation. The stipulation recites that "[a] permit would not have been issued by the ... Department of Highways because of the reasons specified in [the Notice of Violation], and the Department of Highways would not issue a permit unless so directed by a

court of competent jurisdiction." A motion to dismiss National's complaint based on its failure to exhaust administrative remedies was denied by the district court on the basis that National's request for administrative relief would have been futile. This aspect of the district court's ruling is not before us, and we express no view on the propriety of such ruling.

3. Because National's challenge to the applicability of the Outdoor Advertising Act to its sign is based on Article XX of the Colorado Constitution, jurisdiction over this appeal properly lies in this court rather than in the court of appeals. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

ment in both local and municipal matters." Colo. Const. art. XX, § 6. It is well established that in a matter of exclusively local concern, a charter or ordinance provision of a home-rule municipality supersedes a conflicting state statute; in a matter of exclusively state concern, however, a state statute supersedes a conflicting charter or ordinance provision of a home-rule municipality; and, finally, in a matter of mixed local and statewide concern, a charter or ordinance provision of a home-rule municipality may coexist with a state statute as long as there is no conflict, but in the event of a conflict the state statute supersedes the conflicting provision of the charter or ordinance. *E.g., City and County of Denver v. Colorado River Water Conservation District,* 696 P.2d 730, 740–41 (Colo.1985); *Denver & Rio Grande Western Railroad Co. v. City and County of Denver,* 673 P.2d 354, 357–58 (Colo.1983); *City and County of Denver v. Delong,* 195 Colo. at 31–32, 576 P.2d 537, 540 (1978); *Woolverton v. City and County of Denver,* 146 Colo. 247, 252–59, 361 P.2d 982, 984–98 (1961). The pivotal questions in this case, therefore, are: (1) whether the statutory scheme for the control of outdoor advertising signs located within a home-rule municipality along the roads of the state highway system is a matter of exclusively local or of exclusively statewide concern, or instead is a matter of mixed local and statewide concern; and (2) if the matter is of mixed local and statewide concern, whether the provisions of the Outdoor Advertising Act conflict with the sign code adopted by Colorado Springs. *See, e.g., Denver & Rio Grande Western Railroad Co.,* 673 P.2d at 358.

### A.

There is no litmus-like indicator for resolving whether a matter is of local, statewide, or mixed concern. We have made such determinations on an ad hoc basis, taking into consideration the facts of each case. *E.g., Colorado River Water Conservation District,* 696 P.2d at 741; *Denver & Rio Grande Western Railroad Co.,* 673 P.2d at 358. In light of the recognized legislative authority to declare the public policy of the state in matters of statewide concern, we have accorded great weight to the General Assembly's declaration that a particular matter is of statewide interest or concern. *Century Electric Service and Repair, Inc. v. Stone,* 193 Colo. 181, 183, 564 P.2d 953, 954 (1977); *see also City and County of Denver v. Tihen,* 77 Colo. 212, 219–20, 235 P. 777, 780–81 (1925).

Although "zoning" is not expressly enumerated in Article XX of the Colorado Constitution as a specific power of municipal self-government, *cf. City of Thornton v. Farmers Reservoir & Irrigation Co.,* 194 Colo. 526, 575 P.2d 382 (1978), we have nonetheless recognized on numerous occasions that a home-rule municipality's control of land use within its borders through zoning legislation is a matter of local concern. *See, e.g., VFW, Post 4264 v. City of Steamboat Springs,* 195 Colo. 44, 50, 575 P.2d 835, 840, *appeal dismissed,* 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978); *City of Greeley v. Ells,* 186 Colo. 352, 358, 527 P.2d 538, 541 (1974); *Service Oil Co. v. Rhodus,* 179 Colo. 335, 344, 500 P.2d 807, 811 (1972); *Roosevelt v. City of Englewood,* 176 Colo. 576, 586, 492 P.2d 65, 70 (1971). We have also acknowledged that a home-rule municipality's adoption of a sign code to regulate signs within the municipality is a valid exercise of the city's zoning power. *VFW, Post 4264,* 195 Colo. 44, 575 P.2d 835. We have never held, however, that the control of outdoor advertising devices is a matter of exclusively local concern with the result that a conflicting state statute is superseded by a city's ordinance or charter provision.[4]

### B.

The General Assembly expressly declared that its purpose in enacting the Out-

---

**4.** We note that the Colorado Court of Appeals in *Moore v. City of Boulder,* 29 Colo.App. 248, 484 P.2d 134 (1971), held that a home-rule municipality's zoning ordinance aimed at establishing low cost housing in a specific area within the city was a matter of purely local concern and, hence, was not subject to the statutory provi-

sions empowering a city to enact ordinances relating to land use control. Regardless of the correctness of the *Moore* decision, a matter on which we express no opinion, we emphasize that the holding of the case, while admittedly cast in general terms, is quite narrow when read against the particular circumstances of the case.

door Advertising Act was "to control the existing and future use of advertising devices in areas adjacent to the state highway system in order to protect and promote the health, safety, and welfare of the traveling public and the people of Colorado" and further stated that "such purposes are declared to be 'of statewide concern.'" § 43–1–402(1)(a), 17 C.R.S. (1984). The General Assembly then enumerated the following "substantial state interests" which it expressly intended to further by the act:

(I) Protection of the public investment in the state highway system;

(II) Promotion of safety upon the state highway system;

(III) Promotion of the recreational value of public travel;

(IV) Promotion of public pride and spirit both on a statewide and local basis;

(V) Preservation and enhancement of the natural and scenic beauty of this state;

(VI) Broadening the economic well-being and general welfare by attracting to this state tourists and other travelers;

(VII) Providing the traveling public with information as to necessary goods and services in the immediate vicinity of the traveler;

(VIII) Protection and encouragement of local tourist-related businesses for the general economic well-being of this state;

(IX) Insuring that Colorado receives its full share of funds to be apportioned by the congress of the United States for expenditures on federal-aid highways.

§ 43–1–402(1)(a), 17 C.R.S. (1984). In keeping with these "substantial state interests," the statutory scheme, as pertinent here, allows for the erection and maintenance of outdoor advertising signs located along primary and secondary highways in areas zoned for industrial or commercial uses under authority of state law on or after January 1, 1970, provided that such signs are no larger than 150 square feet and subject to the additional proviso, which is of critical importance to this case, that the department issue a permit for the signs. §§ 43–1–404(1)(e)(I)(A) and 43–1–407(1)(c), 17 C.R.S. (1984). The Roadside

Advertising Regulations, which were promulgated by the department pursuant to its statutory authority, § 43–1–415(1), 17 C.R.S. (1984), require a permit for any outdoor advertising sign adjacent to the state highway system in areas zoned for industrial or commercial uses. 2 Colo.Code Regs. § 601–3(VII) (1983). "Areas adjacent to the state highway system" include "areas which are visible from the main-traveled way and within 660 feet of the nearest edge of the right-of-way." *Id.* § 601–3(IV)(E).

### C.

While a home-rule municipality obviously has an interest in controlling outdoor advertising signs within its municipal borders, the legislative declaration of purpose in the Outdoor Advertising Act makes clear that the state also has an interest in achieving and maintaining those safety, recreational, aesthetic, and fiscal goals which the act is intended to further. Vesting a home-rule municipality with exclusive control over outdoor advertising devices located within the municipality along roads of the state highway system would materially impede, if not destroy, any prospect of achieving those goals. The interests of the state in controlling outdoor advertising signs located within a home-rule municipality along roads of the state highway system are not insubstantial and, at the risk of understatement, are entitled to be valued no less than any interest of a home-rule municipality in controlling these same signs within its municipal borders.

In urging us to hold that the control of outdoor advertising devices located within a home-rule municipality along roads of the state highway system is a matter of exclusively local concern, National places great reliance on certain regulations promulgated under the federal Highway and Beautification Act of 1965, 23 U.S.C. § 131 (1982). In particular, National relies on 23 C.F.R. § 750.706(c)(2) (1987), which permits control of outdoor advertising devices by local zoning authorities when state law permits such local control and the state has entered into an agreement to that effect with the United States Department of Transporta-

tion. In 1971, the department did enter into an agreement with the United States Department of Transportation, in which Colorado agreed to effectively control the erection and maintenance of outdoor advertising signs in the state in accordance with the terms of the agreement. *See Orsinger Outdoor Advertising, Inc. v. Department of Highways*, 752 P.2d 55, 63 n. 7 (Colo. 1988).[5] The agreement, which National has appended to its reply brief, permits Colorado, in discharging its responsibilities under the agreement, to notify the Federal Highway Administration that a local zoning authority has adopted regulations which effectively control outdoor advertising signs within its respective geographical jurisdiction. The agreement, however, in no sense divests the state of its ultimate responsibility for maintaining control of outdoor advertising signs throughout the state, including signs located within a home-rule municipality along the roads of the state highway system.[6] Moreover, the federal regulation on which National relies expressly states that the "local control" therein authorized is subject to the following condition:

The regulations established by local zoning authority may be either more restrictive or less restrictive than the criteria contained in the agreement, *unless State law or regulations require equivalent or more restrictive controls.*

2 C.F.R. § 750.706(c)(2) (1987) (emphasis added).

The Outdoor Advertising Act, in our view, contemplates equally restrictive or more restrictive local controls in keeping with the statutory goals and state interests sought to be achieved by the act. Section 43–1–416, 17 C.R.S. (1984), states:

Nothing in this [act] shall be construed to prevent use of zoning powers and establishment of stricter limitations or controls on advertising devices by any municipality or county within its boundaries *so long as such limitations or controls do not jeopardize the receipt by the state of its full share of federal highway funds.*

(Emphasis added).

We recently acknowledged that one of the primary purposes of the act was to make certain that Colorado receives its full share of federal-aid highway funds appropriated by the United States Congress. *Pigg v. State Department of Highways*, 746 P.2d 961, 963 (Colo.1987); *accord Orsinger Outdoor Advertising*, 752 P.2d at 54–55. In light of Colorado's significant interest in maintaining its eligibility for federal-aid highway funds, we construe section 43–1–416 as a clear authorization to a municipality to establish "local controls" for outdoor advertising devices along the state highway system which are no less

---

5. Colorado entered into the 1971 agreement pursuant to the authority granted the department to enter into such agreements in order to "carry out the national policy concerning outdoor advertising adjacent to the interstate system and federal-aid primary highways and to accept any allotment of funds by the United States, or any department or agency thereof, appropriated in furtherance of federal-aid highway legislation." § 43–1–415(3), 17 C.R.S. (1984).

6. The 1971 agreement applies to various areas including "[a]ll zoned commercial and industrial areas within 660 feet of the nearest edge of the right-of-way of all portions of the Federal-aid primary system within the State of Colorado in which outdoor advertising signs may be visible from the main-traveled way of said system." A "Federal-aid primary highway" is defined in the agreement as "any highway within that portion of the State highway system as designated, or as may hereafter be so designated by the State, which has been approved by the Secretary of Transportation pursuant to subsection (b) of Section 103 of Title 23, United States Code." The agreement provides that when a bona fide local zoning authority "adopts regulations which include the size, lighting, and spacing of outdoor advertising, the State may so notify the [Federal Highway] Administrator and control of outdoor advertising in commercial or industrial zones within the geographical jurisdiction of said authority will transfer to subsection A of this section." Subsection A, to which the "local control" provision refers, states:

In zoned commercial and industrial areas, the State may notify the Administrator as notice of effective control that there has been established within such areas regulations which are enforced with respect to the size, lighting, and spacing of outdoor advertising signs consistent with the intent of the Highway Beautification Act of 1965 and with customary use. In such areas, the size, lighting, and spacing requirements set forth below shall not apply.

restrictive than the controls set forth in the Outdoor Advertising Act or the Roadside Advertising Regulations promulgated by the department, so long as such "local controls" do not jeopardize Colorado's eligibility for federal-aid highway funds. It would be nothing short of a quantum leap to read into the statutory terminology of section 43–1–416 implicit authorization to a home-rule municipality to adopt less restrictive controls than those authorized by the statutory scheme, especially in light of the fact that such less restrictive controls could result in Colorado's disqualification for federal-aid highway funds. Nothing in the statutory scheme or the statutory language itself supports such an interpretation.

Finally, while we have recognized that maintaining Colorado's eligibility for federal-aid highway funds was one of the primary purposes of the Outdoor Advertising Act, we hasten to add that the act was also enacted to further other significant state interests. Permitting a home-rule municipality to establish a regulatory scheme for outdoor advertising signs less restrictive than required by the Outdoor Advertising Act not only would impair the prospect of Colorado's continued eligibility for federal-aid highway funding but also would run the risk of unduly depreciating the importance of those other "substantial state interests" enumerated in the Outdoor Advertising Act. See. § 43–1–402(1)(a)(I–IX), 17 C.R.S. (1984). We accordingly hold that the control of outdoor advertising devices within a home-rule municipality along roads of the state highway system is a matter of mixed statewide and local concern.

### D.

■ We now consider whether the regulatory scheme adopted by Colorado Springs conflicts with the provisions of the Outdoor Advertising Act. A conflict between an ordinance and a statute can be found "where the ordinance authorizes the doing of acts which the statute prohibits." *Vick v. People*, 166 Colo. 565, 567, 445 P.2d 220, 221 (1968), *cert. denied*, 394 U.S. 945, 89 S.Ct. 1273, 22 L.Ed.2d 477 (1969); *see also*

*Ray v. City and County of Denver*, 109 Colo. 74, 121 P.2d 886 (1942).

In the instant case, the parties have stipulated that the city of Colorado Springs, through the entity to which it delegated its powers to license and permit building activities, issued a permit to National to erect the disputed sign, but that the department would not have issued a sign permit to National because the erection of the sign was in violation of the provisions of the Outdoor Advertising Act and the Roadside Advertising Regulations adopted by the department. Since the sign code of Colorado Springs thus authorizes what the Outdoor Advertising Act and the Roadside Advertising Regulations prohibit, a conflict is manifest. Under these circumstances, the permit requirements of the Outdoor Advertising Act and the Roadside Advertising Regulations clearly supersede any conflicting provisions of the sign code of Colorado Springs pursuant to which National was issued a permit.

### III.

■ We turn now to National's claim that the decision of Colorado Springs to issue a sign should estop the department from enforcing the Outdoor Advertising Act against National's sign. We considered a similar claim in *National Advertising Company v. Department of Highways*, 718 P.2d 1038 (Colo.1986), in which National argued that the state should be estopped from requiring National to secure a sign permit under the Outdoor Advertising Act due to the fact that Arapahoe County had already issued National a permit for the construction of a billboard in an area along a state highway encompassed by the provisions of the Outdoor Advertising Act. In rejecting National's argument we stated:

> The duties and responsibilities of Arapahoe County are therefore separate and distinct from those of the Department. National cannot have reasonably relied on issuance of a *county* permit in concluding that its sign complied with the requirements of the *state* Outdoor Advertising Act. *See Colorado Water*

*Quality Control Comm'n v. Town of Frederick*, 641 P.2d 958, 964 (Colo.1982) ("Estoppel may be available against a governmental agency to prevent injustice *if* the plaintiffs can show *reasonable* reliance on agency action." (emphasis supplied)). Thus, National's government estoppel claim lacks merit.

*Id.* at 1043–44 (emphasis in original). We find this reasoning dispositive of the estoppel issue raised here. We thus conclude that, under the circumstances of this case, the department is not estopped from enforcing the Outdoor Advertising Act against the sign erected by National.

The judgment of the district court is affirmed.