CITY AND COUNTY OF DENVER, a Colorado municipal corporation; Federico Pena, as Mayor and as a Citizen of the City and County of Denver; Robert F. Ledger, Jr., as City Manager and as a Citizen of the City of Durango; and the City of Durango, a Colorado municipal corporation, Plaintiffs-Appellees and Cross-Appellants,

v.

STATE of Colorado, a State of the United States of America, and Roy Romer, as Governor of the State of Colorado, Defendants-Appellants and Cross-Appellees,

and

Denver Police Protective Association, Colorado Professional Fire Fighters, Robert Clair, Deborah Clair, Gerald Meineke, Dorothy Meineke, Daniel Doyle, David Spialek and Linda Smith, Intervenors-Appellants and Cross-Appellees.

No. 89SA60.

Supreme Court of Colorado, En Banc.

March 12, 1990.

Rehearing Denied April 2, 1990.

Stephen H. Kaplan, Denver City Atty., and George J. Cerrone, Jr. and Darlene M. Ebert, Asst. City Attys., Denver, for plaintiffs-appellees and cross-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Neil L. Tillquist, Asst. Atty. Gen., Denver, for defendants-appellants and cross-appellees.

Thomas B. Buescher, Brauer & Buescher, P.C., Denver, for intervenors-appellants and cross-appellees.

Gerald E. Dahl, Denver, for amicus curiae, Colorado Municipal League.

Justice MULLARKEY delivered the Opinion of the Court.

This is an appeal from a summary judgment and permanent injunction issued in the Denver District Court finding unconstitutional section 8-2-120, 3B C.R.S. (1989 Supp.), which forbids municipalities, with few exceptions, from adopting residency requirements for municipal employees. The court permanently enjoined the state from enforcing section 8-2-120 against the appellees, the City and County of Denver and the City of Durango, finding that it violated Article XX, Section 6(a) of the Colorado Constitution by improperly interfering with the power of home rule municipalities to determine conditions of employment for their employees. We affirm.

I.

On September 12, 1978, Denver voters approved an initiative amending the City Charter to require that all employees hired after July 1, 1979 become residents of the City and County of Denver as a condition of continued employment with the city. The amendment was codified at Denver Charter Section C5.12.[1] Effective January 1, 1980, the City Council of the City of Durango enacted[2] Rule 4.1 of its personnel rules which requires residency in certain instances as a condition of continued employment.[3]

Since being adopted, the residency requirements have been enforced by both Denver and Durango. On April 11, 1988, Governor Roy Romer signed House Bill 1152, codified at section 8-2-120, 3B C.R.S. (1989 Supp.), which purports to preempt residency rules such as those of Denver, Durango and other cities and local governments in Colorado.[4]

1. Denver Charter Section C5.12 states in relevant part:

 **C5.12 Permanent and temporary officers and employees—Residency requirement.**
 C5.12-1 Notwithstanding any other provision of this Charter, particularly the provisions of Section C5.12-2 hereof, all permanent and temporary officers and employees of the City and County of Denver, including those employed within the career service and the classified service of the police and fire departments and those appointed and employed by the mayor; the auditor; the city council; the civil service commission; the election commission; the district attorney; the library; the county court; the board of adjustment zoning; and the board of water commissioners, who are appointed or employed on or after January 1, 1979, shall, as a condition of their employment, and as a condition of their continued employment, reside within the corporate boundaries of the City and County of Denver, within 3 months after acquiring permanent status. All temporary officers and employees shall, as a condition of employment, and as a condition of continued employment, reside within the corporate boundaries of the City and County of Denver.

2. It is unclear from the record whether, pursuant to Art. XX, Section 6 of the Colorado Constitution, Personnel Rule 4.1 was adopted as a charter amendment or ordinance. Because none of the parties raised this issue, we need not address it here.

3. Durango Personnel Rule 4.1 states in relevant part:

 All non-supervisory and supervisory, regular, temporary, or provisional employees of the City shall be required to reside within an area corresponding to the local telephone exchanges for Durango....
 Employees working for the City and residing outside this area as of January 1, 1980, shall not be required to move as long as they maintain that residence. Any employee who is hired or who changes their residence after January 1, 1980, must reside within the designated area.

4. Section 8-2-120, 3B C.R.S. (1989 Supp.), states in relevant part:

 **Residency requirements prohibited for public employment—legislative declaration.** (1) The general assembly hereby finds, determines, and declares that the imposition of residency requirements by public employers works to the detriment of the public health, welfare, and morale as well as to the detriment of the economic well-being of the state. The general assembly further finds, determines, and declares that the right of the indi-

The cities of Denver and Durango filed their complaint on June 21, 1988 naming the State of Colorado and Governor Romer as defendants and seeking a preliminary injunction to enjoin the state from enforcing section 8–2–120. The Denver Police Protective Association, the Colorado Professional Fire Fighters, and several individual Denver employees successfully moved to intervene. After conducting a hearing on the matter, the district court granted a motion for a preliminary injunction finding that section 8–2–120 was unconstitutional as applied to the City and County of Denver and the City of Durango in that it conflicted with the authority of those home rule cities to adopt a residency requirement under Article XX, Section 6(a) of the Colorado Constitution.

In granting the preliminary injunction, the court found the residency requirement for municipal employees to be a matter of strictly local concern. After the parties filed cross-motions for summary judgment, the court granted the cities' motion and permanently enjoined the state from enforcing section 8–2–120 against the appel-

lees. The court found that the Denver and Durango residency provisions were in direct conflict with section 8–2–120 and that because the residency requirements were a term and condition of employment under Article XX, Section 6(a), those requirements superseded section 8–2–120. The state took this direct appeal.

## II.

Once again this court is required to delineate the limits of the power of a home rule municipality to adopt charter provisions and ordinances which are in conflict with state statutes. We often have stated the principles under which we resolve conflicts between provisions of state statutes and home rule charters or ordinances. A brief review is proper here. Article XX, Section 6, of the state constitution, adopted by the voters in 1912, granted "home rule" to municipalities opting to operate under its provisions and thereby altered the basic relationship of such municipalities to the state.[5] It abrogated "Dillon's Rule" which stated:

vidual to work in and or for any local government is a matter of statewide concern and accordingly the provisions of this section preempt any provisions of any such local government to the contrary. The general assembly declares that the problem and hardships to the citizens of this state occasioned by the imposition of employee residency requirements far outweigh any gain devolving to the public employer from the imposition of said requirements.

. . . . .

(3) On and after July 1, 1988, any employee of any local government may at his sole option reside and dwell anywhere such employee chooses, whether within or without the territorial boundaries of the local government, except as provided in paragraph (b) of subsection (4) of this section.

(4)(a) On and after July 1, 1988, no residency requirement may be imposed on any employee by any local government. To the extent that any local government ordinance, charter, resolution, or statute conflicts with this provision, it is hereby preempted by this provision.

(b) Key employees with duties which clearly and demonstrably require them to be close to their place of employment may be subject to reasonable requirements as to the maximum distance the employee's residence may be from the place of work. Such condition

may be imposed, after hearing, by ordinance or resolution.

5. Colorado Constitution, Article XX, Section 6 states in relevant part:

**Home rule for cities and towns.** The people of each city or town of this state, having a population of two thousand inhabitants as determined by the last preceding census taken under the authority of the United States, the state of Colorado or said city or town, are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters.

Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith.

. . . . .

From and after the certifying to and filing with the secretary of state of a charter framed and approved in reasonable conformity with the provisions of this article, such city or town, and the citizens thereof, shall have the powers set out in sections 1, 4 and 5 of this article, and all other powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control:

Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so may it destroy. If it may destroy, it may abridge and control.

*City of Clinton v. Cedar Rapids & Mo. River R.R.*, 24 Iowa 455, 475 (1868); *see generally* Klemme, *The Powers of Home Rule Cities in Colorado*, 36 U.Colo.L.Rev. 321 (1964) (hereinafter *Klemme*).

■ The effect of the amendment was to grant to home rule municipalities *"every power* theretofore possessed by the legislature to authorize municipalities to function in local and municipal affairs." *Four–County Metro. Capital Improvement Dist. v. Board of County Comm'rs*, 149 Colo. 284, 294, 369 P.2d 67, 72 (1962) (emphasis in original). Although the legislature continues to exercise supreme authority over matters of statewide concern, a home rule city is not inferior to the General Assembly with respect to local and municipal matters. *Board of County Comm'rs v. City of Thornton*, 629 P.2d 605 (Colo. 1981). In determining the respective authority of the state legislature and home rule municipalities, we have recognized three broad categories of regulatory matters: (1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern. *City & County of Denver v. Board of County Comm'rs*, 782 P.2d 753, 762 (Colo.1989); *National Advertising Co. v. Department of Highways*, 751 P.2d 632, 635 (Colo.1988); *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d 730, 740–741 (Colo.1985).

In matters of local concern, both home rule cities and the state may legislate. *Conrad v. City of Thornton*, 191 Colo. 444, 448, 553 P.2d 822, 825 (1976). However, when a home rule ordinance or charter provision and a state statute conflict with respect to a local matter, the home rule provision supersedes the conflicting state

provision. *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d at 740; *Colo. Const.*, Art. XX, Sec. 6. In matters of statewide concern, the General Assembly may adopt legislation and home rule municipalities are without power to act unless authorized by the constitution or by state statute. *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d at 740. Finally, we have held that in matters of mixed local and state concern, a charter or ordinance provision of a home rule municipality may coexist with a state statute as long as there is no conflict, but in the event of conflict the state statute supersedes the conflicting provision of the charter or ordinance. *National Advertising*, 751 P.2d at 635.

Although we have found it useful to employ the "local," "mixed," and "statewide" categories in resolving conflicts between local and state legislation, these legal categories should not be mistaken for mutually exclusive or factually perfect descriptions of the relevant interests of the state and local governments. Those affairs which are municipal, mixed or of statewide concern often imperceptibly merge. *Fossett v. State*, 34 Okl.Crim. 106, 107, 245 P. 668, 669 (1926). To state that a matter is of local concern is to draw a legal conclusion based on all the facts and circumstances presented by a case. In fact, there may exist a relatively minor state interest in the matter at issue but we characterize the matter as local to express our conclusion that, in the context of our constitutional scheme, the local regulation must prevail. Thus, even though the state may be able to suggest a plausible interest in regulating a matter to the exclusion of a home rule municipality, such an interest may be insufficient to characterize the matter as being even of "mixed" state and local concern.

We have not developed a particular test which could resolve in every case the issue of whether a particular matter is "local," "state," or "mixed." Instead, we have made these determinations on an ad hoc

---

a. The creation and terms of municipal officers, agencies and employments; the definition, regulation and alteration of the pow-

ers, duties, qualifications and terms or tenure of all municipal officers, agents and employees; ....

basis, taking into consideration the facts of each case. *National Advertising*, 751 P.2d at 635. We have considered the relative interests of the state and the home rule municipality in regulating the matter at issue in a particular case. *See City & County of Denver v. Board of County Comm'rs*, 782 P.2d 753 (court compares interest of Denver in construction of water projects outside its boundaries with the interest of the state and of the counties in which the water projects are located); *National Advertising*, 751 P.2d 632 (court compares city's interest in controlling outdoor advertising signs within its municipal borders, i.e., safety, recreation, aesthetics, with state's interest in continued eligibility for federal highway funds threatened by inconsistent local regulations); *Denver & Rio Grande W. R.R. v. City & County of Denver*, 673 P.2d 354 (Colo.1983) (court compares city's interest in construction of certain viaducts with the "paramount" interest of those living outside of Denver and holds that the construction of the viaducts was of mixed concern); *City of Craig v. Public Util. Comm'n*, 656 P.2d 1313 (Colo. 1983) (court finds that although city has interest in safety of railroad crossings, state's interest is predominant).

■ Although other asserted state interests may be relevant, in determining whether the state interest is sufficient to justify preemption of inconsistent home rule provisions, there are several general factors which are useful to consider. These include the need for statewide uniformity of regulation, *see National Advertising*, 751 P.2d 632 (uniform regulation of highway advertising signs necessary to preclude potential loss of federal revenue); *Bennion v. City & County of Denver*, 180 Colo. 213, 504 P.2d 350 (1972) (state residents have an expectation of uniformity in local criminal laws); and the impact of the municipal regulation on persons living out-

side the municipal limits, *see Denver & Rio Grande W. R.R.*, 673 P.2d 354 (court finds Denver's decision to construct viaduct had important impact on people residing beyond municipal limits); *see also Klemme*, at 342 ("statewide concern" means those things which are of significant interest to people living outside the home rule municipality).

Also relevant to this determination are historical considerations, i.e., whether a particular matter is one traditionally governed by state or by local government; 1 C. Antieau, *Municipal Corporation Law* § 3.40, at 3–115 (1989) (hereinafter *Antieau*). Further, "where not only uniformity is necessary, but cooperation among governmental units, as well, and where action of state and county officials within the limits of the city is imperative to effectuate adequate protection outside the city, the matter will in all likelihood be considered a state concern." *Antieau*, § 3.40 at pp. 3–119 to 3–120. Finally, we have considered relevant the fact that the Colorado Constitution specifically commits a particular matter to state or local regulation. *See Local No. 127, Int'l Bhd. of Police Officers v. City & County of Denver*, 185 Colo. 50, 521 P.2d 916 (1974) (court considered effect of Colo. Const. Art. XX, Section 2, granting Denver right to determine duties of its officers, on question of whether Denver or the state controlled the right of Denver sheriff deputies to exercise police power).

We now apply these principles to the present case to determine whether the issue of the residency of municipal employees is of state, local, or of mixed state and local concern.[6]

### 1. Uniformity

The state has not asserted any particular state interest in uniformity of regulation with respect to residency requirements for municipal employees, nor do we perceive

---

**6.** The state also notes that we have given great weight to legislative declarations that a particular matter is of statewide concern. *National Advertising Co. v. Department of Highways*, 751 P.2d 632, 635 (Colo.1985). Here the legislature declared in section 8–2–120 that "the right of the individual to work in and or for any local government is a matter of statewide con-

cern...." While the statutory declaration is relevant, it is not binding. If the constitutional provisions establishing the right of home rule municipalities to legislate as to their local affairs are to have any meaning, we must look beyond the mere declaration of a state interest and determine whether in fact the interest is present.

one. The Denver residency rule has been in existence since 1979. The fact that other municipalities may have declined to adopt such a requirement presents no special difficulties. In this regard we agree with the decision of the Oregon Supreme Court upholding a municipal residency requirement in *State ex rel. Heinig v. City of Milwaukie,* 231 Or. 473, 479, 373 P.2d 680, 684 (1962):

> In the appropriate case the need for uniformity in the operation of the law may be a sufficient basis for legislative preemption. But uniformity in itself is no virtue, and a municipality is entitled to shape its local law as it sees fit if there is no discernible pervading state interest involved.

There are many differences in the terms and conditions of employment among Colorado's municipalities, yet such inconsistencies alone do not require that we find municipal residency requirements to be of state concern.

### 2. *Extraterritorial Impact*

The state argues that the home rule residency requirements have an adverse economic impact beyond the borders of the particular municipalities. The state claims, for example, that by requiring its employees to live in Denver, the city makes it more difficult for the surrounding communities to compete for property tax and sales tax revenues, arguing that "for every economic gain caused by a person moving into Denver there is a corresponding loss of revenue in the municipality from which the person moved." The state offered evidence to the trial court that 70 percent of fire fighters and 66 percent of police officers hired since January 1, 1986 by the City of Denver lived outside the corporate limits of the city at the time they were hired. From this statistic, the state concludes that 60 percent to 70 percent of all Denver employees would live outside of Denver in the absence of the residency requirement.

However, we are unpersuaded. The fact that a majority of persons hired were living outside of Denver before they were hired does not demonstrate that a significant number of them, by their own choice, would not have moved to Denver in order to be closer to their work. With respect to potential sales tax revenues, there is no evidence as to what extent Denver employees residing within the city limits of Denver spend dollars solely at commercial establishments in Denver rather than in the surrounding communities. Further, even if the state's assertions respecting the desired residency and the consumer spending of Denver employees were true, the state has not shown that such an impact is significant. To the contrary, Denver for its part presented evidence, which was not challenged by the state, that Denver employees comprise merely one-seventh of one percent of the total workforce in the state. In light of this fact, we conclude that the economic impact of the Denver residency requirement on the remainder of the state is *de minimis*.[7]

We also find unconvincing the state's condemnation of "interjurisdictional competition for tax money." Municipalities compete in numerous ways for tax dollars. For example, they may offer tax preferences to encourage industries to relocate to the municipalities. In a more general sense the development of recreational, educational, and cultural facilities also serves to attract businesses and residents. Thus, we are unpersuaded that the impact of the residency requirement on other communities is so significant as to make the residency of a home rule municipality's employees a matter of state concern.

### 3. *Other State Interests*

The state, citing *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), argues that it has an interest in allowing every citizen the right to reside at the place of his or her choosing. While disclaiming any intent to challenge the constitutionality of the municipal residency requirements, the state argues that because

---

**7.** According to the brief of Amicus Curiae, the Colorado Municipal League, 21 home rule municipalities have adopted residency requirements or preferences. No evidence was offered regarding the aggregate economic impact of such residency requirements.

courts have recognized a right to reside where one wishes and because municipal residency requirements "burden" that right, the General Assembly may act to protect such right by forbidding municipal residency requirements.

First, we agree that Denver's residency requirement is constitutional under the federal constitution.[8] In *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976), the Supreme Court in a per curiam opinion upheld a requirement that employees of the city of Philadelphia reside within the city limits. The court distinguished *Shapiro* which required *prior* residency as a condition of eligibility to vote. *McCarthy*, 424 U.S. at 646, 96 S.Ct. at 1155. The Philadelphia provision was a "bona fide continuing residence requirement," the court held. *Id.* at 647, 96 S.Ct. at 1155. Thus, because residency requirements such as those present in this case do not impermissibly infringe on the constitutional right to travel, we cannot accept the state's argument that section 8-2-120, by forbidding such requirements, serves to protect this important right. The question is not whether a person is free to live where he or she wishes but rather whether one may live where one wishes and at the same time insist upon employment by government. *Ector v. City of Torrance*, 10 Cal.3d 129, 137, 109 Cal.Rptr. 849, 853, 514 P.2d 433, 437 (1973), *citing Kennedy v. City of Newark*, 29 N.J. 178, 148 A.2d 473 (1959). We find no constitutional difficulty with the municipal residency requirements in this case.

Second, we note that the Colorado Constitution itself recognizes the value of residency provisions, requiring residence as a condition of employment in the state government. Colo. Const., Art. XII, § 13(6). Thus, to the extent that the state denies the legitimacy of the appellees' proferred policy reasons in support of their residency requirements, the state's position is inconsistent with the very policy advanced by our constitution.[9]

*4. Local Interests*

In contrast to the asserted state interests in forbidding municipal residency rules, the asserted local interests here are substantial. We first note that Article XX, Section 6(a) by its terms grants to home rule cities the power to legislate upon, provide, regulate, conduct and control

[t]he creation and terms of municipal officers, agencies and employments; the definition, regulation and alteration of the powers, duties, qualifications and terms or tenure of all municipal officers, agents and employees....

Thus, the cities' claim that the residency of municipal employees is a matter appropriate for local regulation finds direct textual support in Section 6(a). Further, our cases have supported a broad interpretation of this provision. *See Local No. 127, Int'l Bhd. of Police Officers v. City & County of Denver*, 185 Colo. 50, 521 P.2d 916 (1974) (Denver city charter and not state statute controlled the question of whether Denver sheriffs have legal authority to make arrests); *Coopersmith v. City & County of Denver*, 156 Colo. 469, 399 P.2d 943 (1965) (Denver as home rule city has control over tenure and retirement of employees despite possible conflicts with state).

On the other hand, the authority granted to home rule municipalities in Section 6(a) is not unlimited. For example, the cities do not dispute the applicability of laws which implement the state's general public policy regarding such matters as workers' compensation or employment discrimination even though such laws may interfere with a municipality's right to determine the "terms or tenure" of municipal employment. This result follows because, with respect to aspects of municipal employment which are of statewide concern, state statutes may supersede inconsistent municipal provisions. *Evert v. Ouren*, 37 Colo.App.

---

8. The court of appeals upheld the Denver residency requirement under the United States Constitution in *City & County of Denver v. Industrial Commission*, 666 P.2d 160 (Colo.Ct.App.1983). That case did not consider whether the state could preempt such a requirement.

9. District judges, county judges, and state senators and representatives are also all subject to constitutional residency requirements. Doubtlessly, these were enacted to ensure that such officials will have close links to the community which each serves. *See* Art. VI, Section 11; Art. VI, Section 16; Art. V, Section 4 respectively.

402, 549 P.2d 791 (1976). *See City of Colorado Springs v. Industrial Comm'n,* 749 P.2d 412 (Colo.1988) (eligibility of municipal employees for unemployment compensation benefits was a matter of statewide concern); *City of Aurora v. Aurora Firefighters' Protective Ass'n,* 193 Colo. 437, 566 P.2d 1356 (1977) (collective bargaining of public employees matter of both statewide and local concern).

Although we agree with the state that the enumeration in Section 6 of matters subject to regulation by home rule municipalities is not dispositive, we also agree with the cities that it is significant. If the state is unable to demonstrate a sufficiently weighty state interest in superseding local regulation of such areas, then pursuant to the command of Section 6, statutes in conflict with such local ordinances or charter provisions are superseded.

In addition to the textual support found in Section 6, Denver offered other reasons supporting local control of city employee residency. Denver Mayor Federico Pena testified before the district court and explained the policy reasons behind Denver's residency requirement. First, according to the Mayor, the residency requirement was intended to increase the investment of city tax dollars in the community under the assumption that Denver workers living in Denver are more likely to pay taxes in Denver. For example, as property owners, they will pay Denver property taxes and as consumers they will pay the sales tax.[10] Second, Pena testified that requiring employees to live within the city limits would make them more readily available in the event of a civic emergency. Third, requiring city residency for workers will make

them more attentive, compassionate and diligent in their work.[11]

We find all these reasons to be valid. Although the ready availability of employees for an emergency may be most applicable to a relatively small number of employees, such as fire fighters and police officers, the other legitimate reasons offered by the city apply equally to all city employees. Particularly, we are impressed with Denver's argument that requiring municipal employees to reside within the city limits will instill a sense of pride in their work by guaranteeing that the employees have a stake in the common enterprise of municipal government and thereby may make them more attentive, compassionate and diligent in the way that they provide municipal services to Denver residents.

In finding that the residency of municipal employees is of local concern and therefore governed by a charter provision or ordinance of a home rule city rather than a conflicting state statute, we distinguish several cases. First, in *City of Colorado Springs v. Industrial Commission,* 749 P.2d 412 (Colo.1988), we found that unemployment compensation was a matter of statewide concern and thus that state statutory provisions superseded any conflicting local charter provisions or ordinances of home rule cities. *City of Colorado Springs v. Industrial Comm'n,* 749 P.2d at 416. Like the sign code at issue in *National Advertising,* 751 P.2d 632, unemployment compensation is subject to pervasive federal standards. *See* section 8–70–103(10)(f), 3B C.R.S. (1986) (federal law defines "employment" as including those employed by state and its political subdivisions). Undoubtedly, the state's interest in uniformity among municipalities and be-

---

10. Neither Denver nor the state offered evidence to the trial court on the extent of the tax benefit gained by the city as a result of the residency requirements. In any event, whether or not successful, we find no difficulty with Denver's *effort* to increase tax revenue through the adoption of its residency requirement.

11. Other reasons which have been advanced for municipal residency requirements include promotion of ethnic balance in the community, reduction of high unemployment rates among inner city minority groups, and reduction in absenteeism and tardiness among municipal personnel. *Ector v. City of Torrance,* 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973). In *Ector,* the California Supreme Court held that municipal home rule provisions governing residency superseded a conflicting state statute. As with our constitution, the California Constitution specifically granted home rule cities the power to prescribe in their charters the qualifications of their employees. *Ector,* 109 Cal.Rptr. at 851, 514 P.2d at 435. *But see Uniformed Firefighters Assoc. v. City of New York,* 50 N.Y.2d 85, 428 N.Y.S.2d 197, 405 N.E.2d 679 (1980) (court finds municipal home rule residency requirements superseded by inconsistent state statute).

tween government and private sector workers with respect to unemployment compensation as well as its concern for compliance with federal law and the integrity of the unemployment compensation fund justified the holding in that case and supports the notion that the state interest in the general applicability of unemployment compensation laws was substantial.

In *Huff v. Mayor of Colorado Springs*, 182 Colo. 108, 512 P.2d 632 (1973), we held that the matter of fire fighters' pensions is one of statewide interest and concern. In *Huff*, we noted that fire fighting was a hazardous employment which required a great deal of physical strength, intelligence and skill. In order to attract the caliber of individuals necessary, municipalities must offer a competitive pension plan. *Huff*, 182 Colo. at 113, 512 P.2d at 634. Thus, we held that although the city had an interest in fire fighters' pensions, the state statute governing such pensions superseded municipal home rule provisions because the matter was of statewide concern. The establishment of a uniform fireman's pension plan statewide was "in the exercise of the police powers of this state for the purpose of protecting the health, peace, safety and general welfare of the people of this state." *City of Colorado Springs v. State*, 626 P.2d 1122, 1129 (Colo.1980), *citing* § 31-30-802, C.R.S.1973 (1977 Repl.Vol. 12) (1980 Supp.) (legislative declaration). The state in this case cannot point to any similar state purpose in enacting section 8-2-120.[12]

In *Evert v. Ouren*, 37 Colo.App. 402, 549 P.2d 791 (1976), the court of appeals rejected Denver's argument that it had an absolute right to set the salaries of employees of the Denver Department of Social Services. The court of appeals held that Article XX, Section 6(a) respecting the setting of conditions of employment relates only to "municipal" employees. Because social services in Colorado are provided by a state program, the court properly found that the setting of the salaries of social services employees was a matter of statewide concern. *Evert*, 549 P.2d at 794. We see no inconsistency between our decision here and the court of appeals' decision in *Evert*. The setting of salaries for persons administering state programs is clearly of substantial state interest. Once again, no similar interest can be claimed with respect to the residency of municipal employees.

### III.

 In summary, we hold that the residency of the employees of a home rule municipality is of local concern. Thus, section 8-2-120 does not limit the authority of home rule municipalities to enact charter provisions or ordinances requiring employees to reside within the corporate limits of the municipality as a condition of continuing employment. The decision of the district court is affirmed.

---

**12.** Thus we reject the argument of the intervenors the Denver Police Protective Association and the Colorado Professional Fire Fighters that even if the municipal residency requirements are valid as to other employees they must be struck down as to police officers and fire fighters because police and fire protection are matters of state interest. We have never held that every aspect of police and fire protection is of state concern. *See Huff v. Mayor of Colorado Springs*, 182 Colo. 108, 113, 512 P.2d 632, 634 (1973).